In the Matter of LEE MANSDORF et al., Respondents, *v.* UNEXCELLED, INC., et al., Appellants.

First Department, June 29, 1967.

*Bruce Bromley* of counsel (*Havens, Sandless, Stitt & Tighe,* attorneys), for appellants.

*Joseph Lotterman* (*Milton E. Mermelstein* with him on the brief), attorney for respondents.

WITMER, J. This is a proceeding in which certain shareholders of Unexcelled, Inc., a business corporation, petitioned the court to set aside an election of directors of the corporation at an " annual " meeting of its stockholders held March 21, 1967, and for an order directing a new annual meeting of the stockholders. Respondents directors cross-moved for dismissal of the petition. Petitioners were successful at Special Term, which set aside the election of March 21 and directed that a new annual meeting of the stockholders of the corporation be held on July 12, 1967 for the election of directors of the corporation for the ensuing

year, and denied respondents' cross motion for dismissal of the petition. Respondents have appealed.

Subdivision (b) of section 602 of the Business Corporation Law provides that there shall be an annual meeting of shareholders of a corporation for the election of directors " on a date fixed by or under the by-laws ". Section 703 of that law provides (a) that at such annual meeting directors shall be elected to hold office until the next annual meeting, and (b) that each director elected shall hold office until the end of his term and until his successor is elected.

The by-laws of Unexcelled, Inc. provide that the " annual meeting of shareholders shall be held on such date and at such time in each calendar year as its Board of Directors may in its discretion determine, but not later than the fourth Wednesday in July of each calendar year, at which the shareholders shall elect a Board of Directors ". In September, 1966, in connection with its application to list its stock on the American Stock Exchange, the corporation filed with the Exchange under " General Information " a copy of its by-laws and a separate statement that the by-laws provide for the annual meeting to be held on the fourth Wednesday in July of each year. In answer to petitioner-respondents' contention that therefore such July date controls, appellants assert that the omission of the words " not later than " from such statement was a clerical error, as the by-laws filed therewith show, and that such error should not and may not be used to effect an amendment of the corporation's by-laws concerning the time of the annual meeting. It appears without dispute in the record that prior to 1966 the annual meetings of the corporation were held in the first quarter of the year, in February or March. In 1966 the annual meeting was held on July 12. The notice for that meeting stated that its purpose was to elect 10 directors to hold office for the ensuing year and until the election of their successors; and the proxy statement used for that meeting stated that directors are elected annually, and were being elected for the ensuing year.

In February, 1967 the board of directors fixed March 21, 1967 as the date for the 1967 annual meeting of the corporation, and gave due notice thereof as provided in the by-laws. The meeting was held and the individual respondents-appellants were elected thereat as directors for the ensuing year.

Petitioners successfully contended below and urge here that the provisions for the " annual " election of directors for the ensuing " year " proscribe the calling of a stockholders' meeting for the election of directors for the ensuing year within less than approximately one full year after the last previous annual meet-

ing. Petitioners-respondents rest their case primarily on the literal meaning of the words " annual " and " year ", and point to no statute nor to any provision of the by-laws which limits the exercise of the discretion of the board of directors granted to them in the by-laws. Indeed, the statute expressly authorized the inclusion in the by-laws of provisions for fixing the annual meeting date (Business Corporation Law, § 602).

Where the Legislature has wanted to protect the shareholders and corporation from an undue extension by the directors of their terms of office a specific statutory provision has been made. Thus in section 603 of the Business Corporation Law it is provided that a special meeting of shareholders may be called for the election of directors if a regular meeting for such purpose has not been called within 30 days after the date fixed in the by-laws for the annual meeting or since the last annual meeting. Where the Legislature has wanted to protect directors from an undue involuntary shortening of the term for which they were elected suitable statutory provision has been made (Business Corporation Law, § 702, subd. [b], par. [2]), preventing the precipitous removal of a director by the ruse of reducing the number of directors. Of course a director may still be removed for cause before the end of his term (Business Corporation Law, § 706).

The conduct of the affairs of a business corporation is entrusted to its board of directors. In recent years the New York Legislature has made a thorough revision of our laws for business corporations. We find no reason for imposing judicial restrictions upon boards of directors of such corporations which the Legislature has not seen fit to make, in respect of their discretion in fixing the dates for annual meetings.

The effect of holding the meeting in March, 1967 was to shorten the term of the incumbent directors by three or four months from the time of their election on July 12, 1966. But this shortening was of their own unanimous choosing, and of course did not violate any right of their own which the Legislature had protected. Petitioners have made no charge of mismanagement or wrongdoing by the directors in connection with the business affairs of the corporation, nor have they charged any concealment or breach of faith in the solicitation of the proxies for the meeting of March, 1967. (Cf. *Matter of Ideal Mut. Ins. Co.,* 9 A D 2d 60.) They contend only that as shareholders they had the right to expect that the annual meeting of the corporation would be held 12 months after the July 1966 meeting, so that they could plan a possible proxy fight accordingly, for control of the board of directors.

The by-laws of the corporation, however, as quoted above, expressly place in the board of directors the discretion for fixing the date of the annual meeting *in each calendar year* not later than the fourth Wednesday of July. The stockholders are presumed to have knowledge of the corporation's by-laws. (*Matter of Faehndrich,* 2 N Y 2d 468, 473.) To adopt petitioners' contention would render nugatory such provision of the by-laws, and would be a novel usurpation by the courts of the reasonable discretion placed in the directors. To do so would further run counter to the consistent policy of our courts to avoid interference with the internal management and operation of corporations. (*Matter of Grace* v. *Grace Inst.,* 19 N Y 2d 307, 313.) It appears that except for the year 1966 the annual meeting of the corporation had uniformly been held in February or March of each year. For some undisclosed reason the meeting was delayed until July in 1966, although alert action by petitioners or other stockholders could have required an earlier meeting. (Business Corporation Law, § 603; and, see, *Matter of Schoenhaar* v. *Irving Air Chute Co.,* 16 A D 2d 1028.) Under the rule for which petitioners contend the directors would be powerless to restore the annual meeting to the first quarter of the year. We do not believe that the slight advantage which enures to management by having the discretion in the directors to fix the date of the annual corporation meeting is reason for court intervention to impose a restriction which the Legislature has not seen fit to spell out. (See *Green Co.* v. *Industrial Development,* 8 A D 2d 785.)

The order of May 1, 1967 setting aside the election of directors of Unexcelled, Inc. held March 21, 1967 and directing that a new annual meeting of the stockholders of the corporation be held on July 12, 1967 for the election of directors of the corporation and denying respondents-appellants' cross motion to dismiss the petition should be accordingly reversed on the law and the facts, and the cross motion to dismiss the petition granted, with costs and disbursements.

McGivern, J. (dissenting). I dissent and would affirm. The petitioners, representing the only power bloc in Unexcelled, Inc., presently have no representation on its board of directors, although they are the owners of 68,557 shares of the stock, constituting approximately 10% of its outstanding shares, the current market value of which is allegedly in excess of $1,200,000. Further, they make the representation that there are other friends and associates, owning in the aggregate 100,000 shares of Unexcelled, who also wish to exercise their legitimate right to be represented by directors of their own choosing. The pres-

ent board members are the beneficial owners of about .041% of the corporate stock, two members possessing no shares at all.

And the present board was aware of discord in the ranks of the shareholders. At the meeting of July 12, 1966, wherein 10 directors were elected "to hold office for the ensuing year," petitioners refused to vote for the management slate. Notwithstanding the fact that the period of a year had not ensued, and the terms of the directors had not expired, the board sent out a notice of annual meeting, dated February 28, 1967, the meeting to be held on March 21, 1967. This, in spite of the fact that Unexcelled's listing application, filed with the American Stock Exchange on October 20, 1966, and a public document, stated: "The Annual Meeting of shareholders shall be held on the fourth Wednesday in July in each year." The by-laws actually prescribed "the annual meeting of share-holders shall be held * * * not later than the fourth Wednesday in July of each calendar year".

This stratagem of the board, in precipitately advancing the meeting, had the clear purpose of fending off an anticipated proxy contest, or is open to such an inference. In any event, the petitioners assert this was the result; having received no intimation of the board's intent to schedule the annual meeting four months prior to the expiration of one year from the last "annual" meeting, they were caught completely off guard. It is asserted some of the notices were received during the periods of March 2 to March 8, 1967. A collateral effect was to abridge the terms of the incumbent directors from 12 to 8 months, and also to make it possible that the next "annual" meeting could be held again in July of the next year, allowing for a prolongation of the terms of office of incumbent re-elected directors for an additional 16 months. The maneuver also made it possible for the incumbent management to keep their chosen directors in office for a period of two years as against the legislative mandate calling for the annual election of directors.

In my opinion, the holding of the 1967 meeting on March 21, 1967 was in contravention of the Business Corporation Law, the notice of meeting and the proxy statement pertaining thereto.

Subdivision (b) of section 703 of the Business Corporation Law reads: "Each director shall hold office until the expiration of the term for which he is elected".

Subdivision (b) of section 602 of the Business Corporation Law reads: "A meeting of shareholders shall be held annually for the election of directors".

Paragraph (2) of subdivision (b) of section 702 of the Business Corporation Law reads: "No decrease shall shorten the term of any incumbent director."

These statutes were not made to be evaded. And they will not budge, not even to suit the purposes of a management group. The Business Corporation Law was designed to protect the shareholders of public corporations and to prevent "the possibility of undue manipulation by incumbent directors" (Revisers' Comment to § 704).

The notice of the July 12, 1966 meeting said that one of the purposes was to elect 10 directors "to hold office for the ensuing year."

The proxy statement for the July 12, 1966 meeting said: "It is proposed to elect 10 Directors at the Meeting to serve for the ensuing year."

And this court has declared, in a similar matter involving a corporate coup: "A different obligation of disclosure is involved in proxy solicitation than that involved in formal notices of meeting" (*Matter of Ideal Mut. Ins. Co.*, 9 A D 2d 60, 62).

In my view, the majority disposition condones a want of fundamental fair play and good faith as exacted by the statutes for the public interest and protection. The very purpose of these statutes is to prevent the wrongful perpetration or manipulation of directors by management and to compel honesty and candid disclosure in the solicitation of proxies (Business Corporation Law, § 602, subd. [b]; § 703, subd. [b]; Securities Exchange Act of 1934, § 14, subd. [a]; U. S. Code, tit. 15, § 78n, subd. [a]).

The majority seems to attach significance to the fact that prior to 1966, the annual meetings were held in February or March. It should be noted that section 2 of article II of the by-laws was adopted at the 1965 meeting. And prior to 1966, Unexcelled was not yet subject to the stringent exactions of section 12 of the Securities Exchange Act of 1934, as amended in 1964 (U. S. Code, tit. 15 § 781), nor were its shares listed on the American Stock Exchange. After 1966, Unexcelled was a public corporation, and the date of its annual meetings to elect directors had to comply with all the statutory regulations, both State and Federal. The directors would not be powerless to restore their annual meeting to the first quarter of the year, as the majority indicates. They could do so by a notice and a proxy statement that would actually, honestly and fully set forth the complete purpose of the meeting and not, by a failure to disclose, play cat and mouse with the shareholders.

The majority also opines that: " To do so would further run counter to the consistent policy of our courts to avoid interference with the internal management and operation of corporations (*Matter of Grace* v. *Grace Inst.,* 19 N Y 2d 307, 313)."

In the first place, *Grace* involved a 19th Century charitable corporation created by a special act of the Legislature, one of whose exalted purposes was " to afford such protection, instruction and assistance to young women to the end that they may become useful and virtuous citizens." (L. 1897, ch. 285, § 7.) We have here a purely business corporation, publicly owned, having some 3,000 shareholders. I believe it appropriate also to give recognition to the fact that the public policy of this State, as expressed in our statutes, *supra,* is to protect the shareholders of our publicly held corporations from the machinations of some uninhibited management groups. It is this policy I would uphold.

Lastly, the Business Corporation Law became effective in September of 1963. It is virtually identical with the same Ohio statute, construed in *Toledo Traction, Light & Power Co.* v. *Smith* (205 F. 643) pertaining to a mandatory annual meeting. Therein, the court held that a change in the date of the annual meeting for the election of directors " cannot affect the term of office of the directors then in office."

The interpretation accorded the law and the facts by Special Term was correct, and its order should be affirmed.

STEUER, J. P., CAPOZZOLI and McNALLY, JJ., concur with WITMER, J.; McGIVERN, J. dissents in opinion.

Order entered on May 1, 1967, reversed, on the law and on the facts, with $50 costs and disbursements to the respondents-appellants, and respondents-appellants' cross motion to dismiss the petition granted.