Gerardo ACOSTA, Plaintiff–Appellant,

v.

PACIFIC ENTERPRISES, First Interstate Bank, Ltd., Southern California Gas Company, Thrifty Corporation, J. Foster Hames, Retirement Savings Plans of Pacific Enterprises and Southern California Gas Company, Pacific Enterprises Tax Credit Employee Stock Ownership Plan, Pacific Enterprises TRASOP, Pacific Enterprises PAYSOP, Thrifty Corporation Profit Sharing Plan and Trust, Thrifty Corporation Retirement Savings Plan, Jim Taylor, Charles E. Carlson, Stanley A. Ratzlaff, Charles F. Weiss, Ralph Todaro, individually and as members of Pacific Enterprises' Benefits Committee, Defendants–Appellees.

No. 89–56170.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 9, 1990.

Decided Dec. 11, 1991.

As Amended on Grant of Rehearing
Jan. 23, 1992.

Richard G. McCracken, Andrew J. Kahn, Davis, Cowell & Bowe, San Francisco, Cal., for plaintiff-appellant.

John J. Swenson, Daniel M. Kolkey, Mark Erich Weber, Gibson, Dunn & Crutcher, Los Angeles, Cal., for defendants-appellees, Pacific Enterprises and J. Foster Hames.

Belinda K. Orem, John E. Porter, Paul, Hastings, Janofsky & Walker, Los Angeles, Cal., for defendants-appellees First Interstate Bank of California, Southern California Gas Co., Retirement Sav. Plan and Pacific Enterprises Tax Credit Employee Stock Ownership Plan.

Before D.W. NELSON and REINHARDT, Circuit Judges, and PRICE,* Senior District Judge.

REINHARDT, Circuit Judge:

In this case, we consider the nature and scope of a plan trustee's duty to provide information to an individual participant regarding other participants' shareholdings under an employee benefit plan in the parent corporation. The specific question we must decide is whether a trustee of various employee benefit plans administered on behalf of a single parent company has a fiduciary duty under section 404(a) of ERISA to provide a list of the names, addresses, and shareholdings beneficially

---

* Honorable Edward D. Price, Senior United States District Judge for the Eastern District of California, sitting by designation.

owned by each participant in those plans to an individual participant in one of those plans in order to allow him to solicit votes in the parent company's corporate directors election.

## I

Gerardo Acosta is an employee of Southern California Gas Company ("SoCal Gas"), a wholly-owned subsidiary of Pacific Enterprises, and the president of Local 132 of the Utility Workers Union of America, AFL–CIO.[1] As a participant in the SoCal Gas Retirement Savings Plan ("SoCal Gas Plan"), Acosta beneficially owns common stock in Pacific Enterprises and, pursuant to the plan provisions, is entitled to vote the shares allocated to his plan account by instructing the plan's trustee, fiduciary and shareholder of record, First Interstate Bank.[2]

On February 14, 1989, Acosta demanded that Pacific Enterprises and First Interstate Bank provide him with a list, on computer tape, of the names, addresses, and shareholdings of all participants in the various employee benefits plans maintained by Pacific Enterprises and its subsidiaries.[3] He sought to use the list to solicit, in person, plan participants' votes in favor of Sam Weinstein, Regional Director of the Utility Workers Union, who was seeking election to Pacific Enterprises' board of directors at its May 11, 1989, annual shareholders' meeting.[4] Pacific Enterprises'

Secretary, J. Foster Hames, refused to comply with Acosta's demands. Hames stated that neither Pacific Enterprises nor First Interstate Bank was legally obligated to provide the requested information and that absent such a legal obligation Pacific Enterprises would respect the privacy of its employees.

Acosta brought this action under ERISA to compel the defendants to provide the list. He claimed that Pacific Enterprises and First Interstate, in refusing to do so, had breached their fiduciary duty, in violation of ERISA section 404(a), 29 U.S.C. § 1104(a) (1988), and engaged in self-dealing, in violation of ERISA section 406(b)(1), 29 U.S.C. § 1106(b)(1) (1988). Acosta sought both a permanent injunction and a preliminary injunction barring defendants from soliciting proxies or voting instructions until the court resolved the issue of whether he was entitled to the list.

On March 15, 1989, the district court denied Acosta's motion for a preliminary injunction. Approximately two months later, Pacific Enterprises held its annual shareholders' meeting and election of directors. Weinstein received less than 5% of the voting shares and therefore was not elected to the board of directors. Acosta subsequently appealed the district court's denial of his preliminary injunction motion. On July 31, 1989, the appeal was dismissed as moot.

---

1. Local 132 represents approximately 5,000 SoCal Gas employees, slightly over one-half of the SoCal Gas workforce, for collective bargaining purposes.

2. First Interstate submits Pacific Enterprises' proxy materials to plan participants, along with a voting instruction card. Each participant returns the voting instruction card to First Interstate so it can vote his shares.

3. There are four employee benefit plans maintained by Pacific Enterprises and its subsidiaries, and for which First Interstate Bank acts as trustee: (1) the Pacific Enterprises Retirement Savings Plan, (2) the Southern California Gas Company Retirement Savings Plan, (3) the Pacific Enterprises PAYSOP/TRASOP, and (4) the Thrifty Corporation Profit Sharing Plan.

4. Weinstein is also a shareholder of record of Pacific Enterprises stock. He brought an action in California state court pursuant to California

Corporations Code section 1600(c) seeking the same list that Acosta requests here. Weinstein settled that action with Pacific Enterprises. The parties agreed that they would each receive a list of names, addresses, and shareholdings of participants in the various employee benefit plans who (1) beneficially owned Pacific Enterprises stock and (2) did not object to such a disclosure. Of the 10,368 plan participants who received a mailing from First Interstate inquiring whether they objected to disclosure, 4476 (approximately 43 percent) stated that they objected to having their names, addresses, and shareholdings revealed. A list of the non-objecting participants was provided to Weinstein. In accordance with the settlement agreement, Weinstein returned the list after the May 11, 1989, election. Because Acosta is not a shareholder of record, he could not bring such an action; under California corporations law, only shareholders of record are entitled to inspect and copy a list of shareholders. See Cal.Corp. Code §§ 1600(c), 103 (West 1990).

On remand, the district court granted summary judgment for the defendants with respect to both statutory claims and denied Acosta's request for a permanent injunction. In a memorandum opinion, the district court determined that Acosta did not have standing to challenge decisions affecting plans (or participants of plans) in which he did not participate. As to the plan in which he was a participant, the court held that an ERISA fiduciary's duty to disclose information relating to an ERISA plan is limited to those items expressly listed in the statute and that ERISA does not incorporate broad principles of state trust law requiring disclosure. Accordingly, the court concluded that "Section 1104(a) does not require disclosure by a plan's fiduciaries of a list of plan participants to a plan participant." Mem. op. at 10. The court also stated that "whatever the precise duties of a plan's fiduciaries under Section 1104(a), [the duty to disclose lists of all plan participants to an individual participant] would be unrelated to the purposes of Section 1104(a), *viz*, paying benefits, defraying expenses and making prudent investments." *Id.* The district court also rejected Acosta's claim of self-dealing, finding that a shareholdings list is not a plan asset.

## II

We review *de novo* a district court's grant of a motion for summary judgment. The reviewing court must determine whether there are any genuine issues of material fact and whether the district court applied the relevant substantive law, viewing the evidence in the light most favorable to the nonmoving party. *Tzung v. State Farm Fire & Casualty Co.,* 873 F.2d 1338, 1339–40 (9th Cir.1989).

## III

■ Appellees raise two justiciability arguments in regards to Acosta's claims. We find only one persuasive. First, appellees contend that Acosta's principal claim is now moot because the May 11, 1989, election for which he sought the list has passed. The general rule is that an actual controversy must exist at all stages of federal court proceedings. *Golden v. Zwickler,* 394 U.S. 103, 108–10, 89 S.Ct. 956, 959–60, 22 L.Ed.2d 113 (1969). We must dismiss an appeal as moot " 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.' " *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 396, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 (1980) (quoting *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 1950, 23 L.Ed.2d 491 (1969)); *see also United States v. Geophysical Corp. of Alaska,* 732 F.2d 693, 698 (9th Cir.1984) ("A claim is moot if it has lost its character as a present, live controversy.").

■ We may nonetheless review claims that implicate practices that are "capable of repetition, yet evading review." *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). *See International Organization of Masters, Mates & Pilots [IOMM & P] v. Brown,* — U.S. —, 111 S.Ct. 880, 112 L.Ed.2d 991 (1991); *Lodge 1380, Bhd. of Ry., Airline & Steamship Clerks v. Dennis,* 625 F.2d 819 (9th Cir. 1980). Even though Pacific Enterprises has held its May 11, 1989, corporate directors election and even though the candidate whom Acosta supported was unsuccessful in his bid for directorship, this case is not moot. Acosta has stated that he intends to support candidates in future elections and to seek the support of other participants regarding voting on non-election issues, and that, in connection with these activities, he will seek a list of all participants of any plan maintained by Pacific Enterprises or its subsidiaries. The likelihood that Pacific Enterprises and First Interstate will again deny him access to the requested list "makes this controversy sufficiently capable of repetition to preserve our jurisdiction." *IOMM & P v. Brown,* 111 S.Ct. at 885. In addition, because Pacific Enterprises' annual election proceedings typically last two to three months,

while litigation can consume years, the issue is virtually certain to evade review if it is deemed moot. *See, e.g., First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 774, 98 S.Ct. 1407, 1414–15, 55 L.Ed.2d 707 (1978); *Baldwin v. Redwood City*, 540 F.2d 1360, 1365 (9th Cir.1976), *cert. denied sub nom. Leipzig v. Baldwin*, 431 U.S. 913, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977).

 Appellees also argue that Acosta lacks standing to challenge decisions affecting ERISA plans in which he does not participate. We agree. Although he participates in only one plan—the SoCal Gas Plan—Acosta seeks a list of all participants in all plans maintained by Pacific Enterprises or its subsidiaries. ERISA permits only the Secretary of Labor or a participant, beneficiary, or fiduciary of a plan to bring a civil action for breach of fiduciary duty in connection with the administration of that plan. *See* 29 U.S.C. § 1132(a)(2) (1988); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 957–58, 103 L.Ed.2d 80 (1989). With respect to the plans in which he does not participate, Acosta does not claim that he specifically qualifies as one of the expressly designated persons permitted to sue a fiduciary for breach of duty. He nevertheless contends that he has standing to challenge decisions made with respect to any of the various plans if in fact those plans are administered as one. However, section 404(a)(1) expressly provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1) (1988). If an individual does not participate in a specific plan, the fiduciaries of that plan generally have no fiduciary duty to him. The fact that a fiduciary maintains or administers several plans does not automatically give each participant entitlements in every other plan. Acosta has offered no persuasive reason why we should conclude that he has an entitlement in this case. We therefore conclude that Acosta has standing under ERISA to bring an action for breach of fiduciary duty in the administration of the SoCal Gas Plan, but lacks standing to sue regarding the administration of the remaining plans, in which he does not participate.

## IV

Acosta's principal argument is that a fiduciary has a duty under ERISA section 404(a)(1), 29 U.S.C. § 1104(a)(1) (1988), to respond to a beneficiary's "reasonable" request for information about the trust. He asserts that this duty arises not from any express provision of ERISA, but from the general common law trust principles that Congress intended to incorporate into the statute.

Appellee First Interstate acknowledges that it is a fiduciary. However, both First Interstate and appellee SoCal Gas Plan argue that Acosta cannot assert his claim against the Plan itself because the Plan is not a fiduciary within the meaning of section 404(a)(1). Appellees therefore urge this Court to affirm the district court's grant of summary judgment for the Plan on the ground that a plan covered by ERISA cannot be sued as an entity for breach of fiduciary duty.

 ERISA permits suits for breach of fiduciary duty only against persons who act as a fiduciary with respect to a plan or trust covered by ERISA. *See Batchelor v. Oak Hill Medical Group*, 870 F.2d 1446, 1448 (9th Cir.1989); *Nieto v. Ecker*, 845 F.2d 868, 871–73 (9th Cir.1988). Section 3(21) of ERISA defines a fiduciary as anyone who:

(i) ... exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) ... renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) ... has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A) (1988). This language makes clear that a person's actions, not the official designation of his role, determine whether he enjoys fiduciary status.

A plan covered by ERISA cannot, as an entity, act as a fiduciary with respect to its own assets. Therefore, a plan itself cannot be sued for breach of fiduciary duty. This rule, however, does not inexorably lead to the conclusion that a plan cannot be properly named in a suit alleging breach of fiduciary duty. To the extent that a plaintiff seeks "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan," the plan may be named as a defendant. 29 U.S.C. §§ 1132(a)(1)(B), 1132(d) (1988). Thus, even though Acosta cannot sue the SoCal Gas Plan for breach of fiduciary duty *per se*, he may, as he has done here, join the Plan in his action for breach of fiduciary duty in order that he may obtain the relief sought.

Although ERISA is a "comprehensive and reticulated statute," *Nachman Corp. v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 361, 100 S.Ct. 1723, 1726, 64 L.Ed.2d 354 (1980), it does not purport to state expressly each and every one of a fiduciary's duties. Rather, ERISA's legislative history demonstrates that "Congress invoked the common law of trusts to define the general scope of [a fiduciary's] authority and responsibility." *Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc.*, 472 U.S. 559, 570, 105 S.Ct. 2833, 2840, 86 L.Ed.2d 447 (1985) (citing S.Rep. No. 127, 93d Cong., 2d Sess., at 29 (1973), *reprinted in* 1974 U.S.C.C.A.N. 4639, 4865; H.R.Rep. No. 533, 93d Cong., 2d Sess., at 11 (1973), *reprinted in* 1974 U.S.C.C.A.N. 4639, 4649). The language of section 404(a) reflects this congressional intent that common law trust principles animate the fiduciary responsibility provisions of ERISA. Under ERISA, a fiduciary is required to discharge its duties "solely in the interest of the participants and beneficiaries," 29 U.S.C. § 1104(a)(1) (1988), and "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims," *id.* § 1104(a)(1)(B).

However, section 404(a) further provides that a fiduciary must discharge its duties "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." *Id.* § 1104(a)(1)(A). The legislative history of section 404(a) cautions that "courts [should] interpret the prudent man rule and other fiduciary standards bearing in mind the special nature and purposes of employee benefit plans intended to be effectuated by the Act." H.R.Rep. No. 533, 93d Cong., 2d Sess., at 12 (1973), *reprinted in* 1974 U.S.C.C.A.N. 4639, 4650. In sum, we agree that the common law of trusts informs the duties of an ERISA fiduciary; at the same time, however, we recognize that a fiduciary's duties are circumscribed by Congress' overriding goal of ensuring "the soundness and stability of plans with respect to adequate funds to pay promised benefits." 29 U.S.C. § 1001 (1988).

Other circuits, applying a similar analysis, have recognized that an ERISA fiduciary's duty to disclose information to beneficiaries is not limited to the dissemination of the documents and notices specified in 29 U.S.C. sections 1021–1031, but may in some circumstances extend to additional disclosures where the interests of the beneficiaries so require. However, common law trust duties regarding the disclosure of information to beneficiaries may be read into ERISA through section 404(a) only to the extent that they relate to the provision of benefits or the defrayment of expenses, and only insofar as they do not contradict or supplant the existing reporting and disclosure provisions. Thus, an

ERISA fiduciary has an affirmative duty to inform beneficiaries of circumstances that threaten the funding of benefits, *Dellacava v. Painters Pension Fund,* 851 F.2d 22, 27 (2d Cir.1988); *see also Rosen v. Hotel & Restaurant Employees Union,* 637 F.2d 592, 599–600 (3d Cir.) (holding that the Labor–Management Relations Act incorporates common law fiduciary duties relating to disclosure of information), *cert. denied,* 454 U.S. 898, 102 S.Ct. 398, 70 L.Ed.2d 213 (1981), and to provide an individual faced with termination of plan coverage, upon request, "complete and correct material information on [his] status and options," *Eddy v. Colonial Life Ins. Co. of America,* 919 F.2d 747, 751 (D.C.Cir.1990). A fiduciary need not, however, adhere to stricter deadlines for statutorily required reporting than those provided in the statute, *Porto v. Armco, Inc.,* 825 F.2d 1274, 1275–76 (8th Cir.1987), *cert. denied,* 485 U.S. 937, 108 S.Ct. 1114, 99 L.Ed.2d 274 (1988). The task before us is to determine whether the disclosure requested by Acosta is sufficiently related to the provision of benefits or the defrayment of expenses. We conclude that it is not.

Acosta contends that First Interstate, as a fiduciary and trustee of the SoCal Gas Plan, has a common law duty to provide beneficiaries with a list of the voting shares of Pacific Enterprises stock held by each individual plan participant. He argues that access to such a list would allow plan participants to make informed decisions in upcoming elections. Whether or not Acosta's access to such a list would affect the informed nature of plan participants' votes, his request to use the shareholdings list to solicit votes in a board of directors election is nonetheless not sufficiently related to the requisite statutory objectives. Acosta's assertion that his right to vote is a plan "benefit" and that the participant-shareholder list relates to that benefit is simply unpersuasive.[5] The term "benefit" refers to a participant's or beneficiary's right to receive monies from the plan administrator or trustee, not the right to vote in an election for corporate officers.[6]

We conclude that there is not a sufficient nexus between Acosta's demand for a list of SoCal Gas Plan participants' shareholdings in Pacific Enterprises for the purpose of soliciting votes in a proxy contest and the provision of benefits or defrayment of expenses under the Plan to justify imposing a duty upon the Plan's fiduciary to disclose such a list.

## V

In his second claim for relief, Acosta alleges that Pacific Enterprises violated

---

**5.** Acosta does not contend that access to the participant-shareholder list is related to the second purpose of an ERISA fiduciary, namely, defraying expenses. Clearly, it is not.

**6.** Acosta refers to the SoCal Gas Plan as an "employee stock ownership plan" (ESOP), which is an individual account plan "designed to invest primarily in qualifying employer securities." ERISA § 407(d)(6)(A), 29 U.S.C. § 1107(d)(6)(A) (1988). Section 409 of the Internal Revenue Code provides that in order to be tax qualified, an ESOP must allow participants to direct the voting of employer securities allocated to their accounts, 26 U.S.C. § 409(e) (1988), and must offer participants the same voting rights as those of shareholders who own the highest class of the employer's stock readily available on the public market, *id.* § 409(1). Acosta contends that these provisions dictate that First Interstate be required to distribute the participant-shareholder list for the SoCal Gas Plan, because they establish that voting is a significant "benefit" that accrues from membership in an ESOP. We need not decide whether Acosta's argument is correct, however, because the SoCal Gas Plan is not an ESOP within the meaning of ERISA section 407(d)(6)(A). The SoCal Gas Plan is not "designed to invest primarily in qualifying employer securities," but rather offers six different investment funds among which participants may allocate their contributions and deferrals. Only one of these funds consists of Pacific Enterprises common stock and dividends. In addition, the SoCal Gas Plan does not designate itself as an ESOP, but as "a plan intended to qualify as a stock bonus plan." In any event, we strongly doubt that the fiduciary's duties would require it to furnish the requested information even if the Plan qualified as an ESOP.

section 406(b)(1) of ERISA by "deal[ing] with the assets of the plan in [its] own interest or for [its] own account." 29 U.S.C. § 1106(b)(1) (1988). The district court granted summary judgment for the defendants on this claim on the ground that the participant-shareholder list requested by Acosta is not a plan asset within the meaning of ERISA.

ERISA does not expressly define the term "assets of the plan." [7] Nor has this circuit had an occasion to delineate the precise boundaries of the term as it is used in section 406(b)(1). However, ERISA's legislative history makes clear that "the crucible of congressional concern was misuse and mismanagement of plan assets by plan administrators and that ERISA was designed to prevent these abuses in the future." *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 140 n. 8, 105 S.Ct. 3085, 3089 n. 8, 87 L.Ed.2d 96 (1985) (citing 120 Cong.Rec. 29,932, 29,951, 29,954, 29,-957, 29,961, 29,194, 29,196–97, 29,206 (1974)). In light of Congress' overriding concern with the protection of plan participants and beneficiaries, courts have generally construed the protective provisions of § 406(b) broadly. *See, e.g., Lowen v. Tower Asset Management, Inc.,* 829 F.2d 1209, 1213 (2d Cir.1987); *Leigh v. Engle,* 727 F.2d 113, 126 (7th Cir.1984).

■ Appellees argue that the term "assets of the plan" encompasses only financial contributions received by the plan administrators. We decline to cabin the term in such a restricted definition. Congress' imposition of a broad duty of loyalty upon fiduciaries of employee benefit plans counsels a more functional approach. To determine whether a particular item constitutes an "asset of the plan," it is necessary to determine whether the item in question may be used to the benefit (financial or otherwise) of the fiduciary at the expense of plan participants or beneficiaries. However, in this case we need not decide wheth-

er a participant-shareholder list constitutes a plan asset.

■ Notwithstanding the broad definition given the phrase "assets of the plan," Acosta's self-dealing claim is not sufficient to survive a motion for summary judgment. There is no evidence in the record that the defendants used a shareholdings list in a manner that constitutes self-dealing. Acosta claims that a factual controversy exists because "the record contains declarations demonstrating that incumbent management used lists which were not available to Plaintiff's campaign." Appellant's Opening Brief, at 26 n. 16. His claim, while true, is unavailing. The record shows that Pacific Enterprises, as an employer, sent its employees letters and newsletters. There is no evidence in the record that it used any shareholdings list to solicit votes for the May 11, 1989, board of directors election other than the list of non-objecting plan participants that First Interstate provided to Pacific Enterprises and the Weinstein campaign.[8]

■ Acosta asserts that even if Pacific Enterprise never actually used a list of plan participants' shareholdings to solicit votes, his self-dealing claim survives for two reasons. First, he states that there is a factual dispute over the means by which Pacific Enterprises obtained the names and addresses of the persons on its employee lists. In particular, Acosta asserts that the employee list of names and addresses may have been compiled while Pacific Enterprises acted in its fiduciary capacity—e.g. from benefit documents. This assertion is precisely the kind of bald speculation that is ripe for summary judgment. Acosta has not presented any evidence that Pacific Enterprises, as an employer, does not maintain a file that includes the names and addresses of its employees and has been derived independent of its employee benefits records. Nor has Acosta alleged that Pacific Enterprises targeted certain em-

---

**7.** The district court's reliance on the Department of Labor regulations to determine what constitutes a "plan asset" is misplaced. The regulations cited define and establish rules regarding two particular types of "plan assets": plan investments in another entity and participant con-

tributions. 29 C.F.R. §§ 2510.3–101 and –102. The regulations do not purport to be exhaustive definitions of plan assets generally.

**8.** *See supra* note 4.

ployees for receipt of letters and newsletters regarding the May 11 election.

 Second, Acosta states that Pacific Enterprises' inherent power to use the participant-shareholder list to its benefit gives rise to a self-dealing claim because such a power "has a continuing deterrent effect on anyone considering whether to oppose management in corporate elections." Appellant's Reply Brief, at 11. This argument lacks merit. All fiduciaries have the inherent power that would enable them to deal with the assets of ERISA plans for their own benefit or account. However, we know of no rule that permits a plaintiff to bootstrap a claim for the actual commission of a wrong merely by alleging that the defendant has the power to commit it. In order to state a claim for self-dealing under ERISA, Acosta must demonstrate that Pacific Enterprises actually used its power to deal with the assets of the plan for its own benefit or account. This he has failed to do. Therefore, we conclude that the district court properly granted summary judgment for the defendants on Acosta's self-dealing claim.

The judgment of the district court is accordingly

AFFIRMED.