In re SEARS, ROEBUCK AND CO. SECURITIES LITIGATION.

Civ. A. Nos. 91–2878, 91–3210 and 91–3322.

United States District Court, E.D. Pennsylvania.

May 1, 1992.

Richard D. Greenfield, Mark C. Rifkin, Greenfield & Chimicles, Haverford, Pa., Diane M. Nast, Kohn Klein, Nast & Graf, Marguerite R. Goodman, Philadelphia, Pa., for plaintiffs.

Robert L. Hickok, Pepper, Hamilton & Scheetz, Philadelphia, Pa., Herbert M. Wachtell, Theodore N. Mirvis, Wachtell, Lipton, Rosen & Katz, New York City, for defendants.

## MEMORANDUM

BARTLE, District Judge.

This action is a consolidation of three cases which were filed by various shareholders, as shareholder derivative and class actions, against Sears, Roebuck & Company ("Sears").[1] Plaintiffs alleged violations of to § 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a), and Rule 14(a)-9 promulgated thereunder; § 404 of the Employee Retirement Income Security Act, 29 U.S.C. § 1104; and New York corporate law.[2]

Plaintiffs allege a class consisting of:

(1) all persons who owned shares of Sears' common stock on March 21, 1991, and were eligible to vote at the 1991 Annual Meeting (the "1991 Proxy Class"); (2) all persons who owned shares of Sears' common stock on the record dates and who were eligible to vote at the 1989, 1990, or 1991 Annual Meetings (the "Proxy Class"); and (3) all persons who were participants in and/or beneficial owners of Sears common stock held in the Plans and who were entitled pursuant to the Plans' Trustees to vote those shares in the election of directors at the 1991 Annual Meeting....[3]

Consolidated Complaint ¶ 10.

According to plaintiffs' Consolidated Complaint, in the latter half of the 1980's, Sears began slipping from its first place ranking as "the largest merchandising business (measured by merchandising revenues) in the United States." Consolidated Complaint ¶ 17. Plaintiffs contend that in 1987, "against the back-drop of long-term mismanagement and amid speculation that Sears might be the target of a hostile takeover," Sears put into effect a plan for restructuring in order to fend off a possible unfriendly acquisition. Consolidated Complaint ¶ 23.

As a result of the "restructuring," numerous shareholders commenced litigation against Sears and its directors. Most of these actions were consolidated in November, 1988 as *In re: Sears Shareholders Litigation*, in the Circuit Court of Cook County Illinois—Chancery Division ("Chicago action"). The initial complaint in the Chicago action charged the members of Sears' Board of Directors with breaching their fiduciary duties, waste, gross mismanagement, and other violations of their

---

1. On May 6, 1991, plaintiffs S.N. Isquith ("Isquith") and C. Oliver Burt ("Burt") filed a Class and Derivative Action captioned *Isquith, et al. v. Brennan, et al.*, Civil Action No. 91-2878. On May 20, 1991, Barnett Stepak, David Jaroslawicz and Isadore Burnstein commenced a related Class Action captioned *Stepak, et al. v. Sears, Roebuck and Co., et al.*, Civil Action No. 91-3210. On May 24, 1991, plaintiff Charles Miller ("Miller") commenced a Class Action captioned *Miller v. Brennan, et al.*, Civil Action No. 91-3322. On November 15, 1991, this Court en-

tered Stipulated Pretrial Order No. 1 which, among other things, consolidated the three actions and directed plaintiffs to file a Consolidated Complaint. The plaintiffs who have filed this Consolidated Complaint are Isquith, Burt, Miller and Edward J. Erbacher.

2. Sears is incorporated under New York state law.

3. No class has as yet been certified.

obligations to Sears and its shareholders. No allegations of fraud were made. The existence of the Chicago action was not disclosed in the Proxy Statements for the 1989, 1990 or 1991 annual meetings of Sears' stockholders.

Following discovery and extensive negotiations in the Chicago action, the parties reached a settlement embodied in a Stipulation of Settlement dated October 23, 1991. (Defendant's motion, Exhibit A). Following a hearing, the Chicago court approved the Stipulation of Settlement, and on January 7, 1992, entered an Order and Final Judgment to that effect. (Defendant's motion, Exhibit D). Plaintiffs in the instant action were parties to the Stipulation of Settlement.

The settlement released and discharged certain claims that were or could have been asserted in the Chicago action. These so-called "Settled Claims" also included all those causes of action that are or could have been asserted in the case at bar, with the exception of three claims defined as the "Excluded Claims." Under the terms of the settlement of the Chicago action, plaintiffs would be permitted to pursue only these claims in the instant action.

Accordingly, it is only these three "Excluded Claims" that constitute plaintiffs' complaint in this action. They are defined as follows:

(1) a claim by Sears ESOP [Employee Stock Ownership Plan] participants for injunctive relief that it was a breach of fiduciary duty for the Company not to have mailed to them the solicitation materials of Mr. Monks in connection with the 1991 annual meeting of shareholders;

(2) a claim for injunctive relief that the change in the composition and size of the Sears Board of Directors in 1991 violated Section 702(b)(2) of the New York Business Corporation Law; and

(3) a proxy disclosure claim on behalf of Sears shareholders eligible to vote in 1989–1991 under the federal proxy laws for omission to disclose the existence of the [Chicago] Action and the underlying facts complained of in

the Action as of the annual meeting of shareholders in such years.

The Chicago action settlement also specified that the Excluded Claims could be asserted solely against defendant Sears, and no individual defendants, and that the only relief sought as to any of the three claims would be equitable relief.

Now before this Court is the motion of defendant Sears to dismiss Counts I and II of plaintiffs' Consolidated Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and for summary judgment with respect to Counts III and IV, pursuant to Rule 56 of the Federal Rules of Civil Procedure. Also before this Court is the motion of plaintiffs for partial summary judgment with respect to Counts I and II of their Consolidated Complaint.

Rule 12(b)(6) of the Federal Rules of Civil Procedure states in pertinent part:

... the following defenses may at the option of the pleader be made by motion: ... (6) failure to state a claim upon which relief can be granted ...

Fed.Rule Civ.P. 12(b)(6). When reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must accept as true all allegations in the complaint, and all reasonable inferences that can be drawn therefrom. The allegations and inferences must be viewed in the light most favorable to the non-moving party. *Sturm v. Clark*, 835 F.2d 1009, 1011 (3d Cir.1987); *Federal Insurance Company v. Ayers*, 741 F.Supp. 1179, 1182 (E.D.Pa. 1990).

Rule 56(c), relating to summary judgment motions, provides:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.Rule Civ.P. 56(c). *See also, Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). It is well settled law that in deciding motions for

summary judgment, the question to consider when determining if there is a "genuine issue of material fact" is whether there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Weldon v. Kraft, Inc.,* 896 F.2d 793, 797 (3d Cir.1990). The evidence must be viewed in the light most favorable to the non-moving party. *Weldon* at 797.

■ Counts I and II of plaintiffs' Consolidated Complaint allege that Sears violated § 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a), and Rule 14a–9 promulgated thereunder by the Securities and Exchange Commission ("SEC"), by omitting to disclose in its 1989, 1990 and 1991 proxy statements, the existence of the Chicago action and the allegations of wrongdoing complained of therein.

Section 14(a) makes it unlawful to solicit proxies in contravention of "such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." [4] Rule 14a–9(a) provides in pertinent part:

> No solicitation ... shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier commu-

nication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

17 C.F.R. § 240.14a–9(a). In short, an omitted fact must be disclosed if the omission renders other disclosed statements false and misleading in some material respect.

Sears contends that it was not required to disclose in the proxy statement the pendency of the Chicago action or the allegations made since they simply involved breach of fiduciary duty and related claims under state corporate law, not amounting to fraud.

The Supreme Court spoke to this general subject in *Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977). In that case, minority stockholders in a subsidiary corporation had brought an action under Delaware law to set aside a merger between the subsidiary corporation and the parent corporation, which would eliminate the minority stockholders. Alternatively, the minority stockholders sought to obtain the fair value of their stock.[5] They alleged that their stock had been "fraudulently" appraised in an effort to freeze them out at an inadequate price, in violation of § 10(b) of the Securities Exchange Act of 1934. The Supreme Court held that, absent deception or manipulation, as used in the federal securities law, a claim for breach of fiduciary duty against the majority shareholders—a traditional state law claim—is not within the purview of the federal securities laws. The Court observed that the securities law in question was not intended to cover "instances of corporate mismanagement ... in

---

**4.** Section 14(a) provides:
It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

15 U.S.C. § 78n(a).

**5.** The majority stockholder parent corporation owned 95% of the subsidiary corporation's stock. Pursuant to Delaware Corporation Law, a parent corporation which owns at least 90% of the stock of a subsidiary may merge with that subsidiary upon approval by the parent's board of directors. The statute permits payment in cash for the shares of the minority stockholders, and does not require the consent of, or advance notice to, the minority stockholders.

which the essence of the complaint is that shareholders were treated unfairly by a fiduciary." The Court found that the claim for relief did not rise to the level of deception or manipulation needed to sustain a cause of action for violation of § 10(b), and that "Congress by § 10(b) did not seek to regulate transactions which constitute no more than internal corporate mismanagement." (Citation omitted). *Santa Fe* at 479, 97 S.Ct. at 1304.

The Court of Appeals for the Third Circuit followed the reasoning set forth in *Santa Fe* in deciding *Biesenbach v. Guenther,* 588 F.2d 400 (3d Cir.1978). That case involved a claim that high interest loans made by the defendant directors to the corporation breached the fiduciary duty of the directors to the shareholders, in that the defendant directors had falsely described the loans as being in the best interest of the shareholders. The Court or Appeals held that allegations against the individuals on the board of directors of a corporation, for failure to disclose to shareholders an alleged breach of fiduciary duty or improper motivation on the part of the directors, may support a cause of action under Pennsylvania law, but does not constitute a violation of § 10(b) of the Securities Exchange Act. The Court of Appeals concluded:

> Appellants believe that the misrepresentations and omissions that occurred in this case were: 1) the misleading statements by defendants that the transactions were in the best interests of the shareholders and 2) the defendants' failure to disclose the true purpose behind the activities. In effect, appellants are stating that the failure to disclose the breach of fiduciary duty is a misrepresentation sufficient to constitute a violation of the [Securities Exchange] Act. We refuse to adopt this approach which would clearly circumvent the Supreme Court's holding in *Santa Fe.*

*Biesenbach* at 402.

In the case of *Lewis v. Chrysler Corporation,* 949 F.2d 644, 651 (3d Cir.1991), which involved the adoption by the defendant board of directors of a shareholders' rights plan commonly known as a "poison pill," the plaintiffs claimed that the description of the reasons for the adoption of the plan were falsely or improperly described. The Court of Appeals reiterated the principle that corporate officers and directors who fail to disclose an entrenchment motive or scheme underlying their actions do not violate the § 10(b) of the Securities Exchange Act.

While *Santa Fe, Biesenbach* and *Lewis* specifically dealt with a claim under § 10(b) of the Securities Exchange Act, and SEC Rule 10b–5 promulgated thereunder, the principles enunciated in those cases apply to claims brought under § 14(a) of the Securities Exchange Act as well as those under § 10(b). *Basic, Inc. v. Levinson,* 485 U.S. 224, 231–32, 108 S.Ct. 978, 983–84, 99 L.Ed.2d 194 (1988); *Nutis v. Penn Merchandising Corp.,* 610 F.Supp. 1573, 1582 n. 13 (E.D.Pa.1985), *aff'd without op.,* 791 F.2d 919 (3d Cir.1986).

▮ In this case, the omission of any mention of the Chicago action in the Sears proxy statement was simply the failure to disclose the existence of state law claims of mismanagement and breach of fiduciary duty where no fraud, deception or manipulation was alleged. Accordingly, under *Santa Fe, Biesenbach,* and *Lewis,* defendant's omission of a description of the Chicago action in the proxy statement is not a material omission under § 14(a) of the Securities Exchange Act and Rule 14a–9 promulgated thereunder.

▮ Plaintiffs also contend that pursuant to SEC Regulation S–K, Item 103 and the Instructions thereto, Sears was required to disclose in their proxy statement, under § 14 of the Securities Exchange Act, the existence of the Chicago action. The proxy regulations promulgated by the SEC include provisions setting forth specific "line item" information that must be disclosed in connection with proxy solicitation. The Item which applies to the situation at bar is Item 103 of Regulation S–K, along with Instruction 4 to Item 103. Item 103 provides:

> Describe briefly any *material* pending legal proceedings, other than ordinary

routine litigation incidental to the business, to which the registrant or any of its subsidiaries is a party or of which any of their property is the subject. Include the name of the court or agency in which the proceedings are pending, the date instituted, the principal parties thereto, a description of the factual basis alleged to underlie the proceeding and the relief sought. Include similar information as to any such proceedings known to be contemplated by governmental authorities. [Emphasis added.]

Instruction 4 to Item 103 further provides:

Any *material* proceedings to which any director, officer or affiliate of the registrant, any owner of record or beneficially of more than five percent of any class of voting securities of the registrant, or any associate of any such director, officer, affiliate of the registrant, or security holder *is a party adverse to the registrant* or any of its subsidiaries or has a material interest adverse to the registrant or any of its subsidiaries, also shall be described. [Emphasis added.]

Standard Instructions for Filing Forms Under the Securities Act of 1933 and the Securities Exchange Act of 1934, 17 C.F.R. § 229.10 *et seq.*

Sears was not obligated to disclose the Chicago action because Instruction 4 to Item 103 only requires disclosure of "material proceedings to which any director, officer or affiliate of the registrant ... is a party adverse to the registrant or any of its subsidiaries or has a material interest adverse to the registrant or any of its subsidiaries." Since, as set forth above, the omission in the proxy materials of reference to the Chicago action is not a material omission, plaintiffs' claim that the Chicago action should have been disclosed as a line item pursuant to SEC regulation S–K, Item 103 and instructions thereto is without merit. *Bell Atlantic Corporation v. Bolger*, 771 F.Supp. 686, 686–87 (E.D.Pa. 1991).

Additionally, Item 103 only requires disclosure of a proceeding in which a director is a party "adverse" to the defendant, which was not the case in the Chicago action. The directors were not parties "adverse" to Sears in any respect. As plaintiffs acknowledge in their brief, Sears was a nominal defendant in the Chicago action, and the directors were also defendants. Sears and the directors, in fact, were represented in the Chicago action by the same counsel.

Accordingly, the motion of defendant Sears to dismiss Counts I and II of the Consolidated Complaint will be granted, and the motion of plaintiffs for partial summary judgment with respect to Counts I and II of the Consolidated Complaint will be denied.

Count III of plaintiffs' Consolidated Complaint alleges violation of § 702(b)(2) of the New York Business Corporation Law ("BCL"). Section 702(b)(2) provides in relevant part:

(b) The number of directors may be increased or decreased by amendment of the by-laws, or by action of the shareholders or of the Board under the specific provisions of a by-law adopted by the shareholders, subject to the following limitations:

\*      \*      \*      \*      \*      \*

(2) No decrease shall shorten the term of any incumbent director.

N.Y.B.C.L. § 702(b)(2) (1963).

In March, 1991, the Sears Board of Directors determined to reduce the number of directors from fifteen to ten, effective at the May, 1991 annual shareholders meeting. Of the five directorships to be eliminated, one director resigned and another retired. The terms of both of those directors would have ended at the 1991 annual meeting. At the same time, three inside Directors on the Sears Board, whose terms would have extended beyond the 1991 annual meeting, also decided to resign. Those resignations were effective on the same date as the May, 1991 annual shareholders meeting. It is these three resignations which are the subject of plaintiffs' claim.

The voluntary nature of the resignations is not in dispute, and is fully supported by affidavits of the three directors in question.

The reduction of the Board's size to ten did not shorten the term of any incumbent director. Rather, by virtue of the resignations, the Board had only ten directors as of the May, 1991 annual meeting. Board seats, vacant as a result of the resignations, were eliminated. The resolution reducing the number of directors simply conformed the size of the Board to the number of directors who were still active and holding a seat.

The Appellate Division of the New York Supreme Court discussed the purpose of BCL § 702(b)(2) in *In re Unexcelled, Inc.,* 28 A.D.2d 44, 46, 281 N.Y.S.2d 173 (1st Dep't 1967):

> Where the legislature has wanted to protect directors from an undue involuntary shortening of the terms for which they were elected suitable statutory provision has been made (Business Corporation Law, § 702(b)(2), preventing the precipitous removal of a director by the ruse of reducing the number of directors.

In short, the New York BCL statute is intended to prohibit an "involuntary shortening" of a director's term. It is designed to prevent a majority of the directors or stockholders from attempting a palace coup by forcing out duly elected dissident or minority directors in the middle of their terms. Neither the letter nor the spirit of the statute is being violated here. Accordingly, the motion of defendant for summary judgment with respect to Count III will be granted.

■ Count IV of plaintiffs' Consolidated Complaint alleges a violation of Section 404 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1104. Plaintiffs' claim arises out of certain events surrounding the candidacy of Robert A.G. Monks ("Monks") for a seat on the Sears Board of Directors, at the 1991 shareholders annual meeting. Sears and the Trustees of Sears' Profit Sharing Trust offered Monks the opportunity to have his proxy solicitation materials mailed to the approximately 220,000 Fund participants, provided that he defray the reasonable cost of doing so. The estimated cost of mailing was $300,000. Monks refused the offer, taking the position that the expenses of making his solicitation materials available to the participants should have come out of the employee-participants' assets in the Fund. Plaintiffs allege that Sears "conspired" with the Trustees to breach their fiduciary duties under § 404 of ERISA by refusing to mail to the Fund's participants Monks' proxy solicitation materials, at the expense of the Profit Sharing Trust, in connection with the 1991 annual meeting of shareholders. Plaintiffs maintain that ERISA requires expenditure of Fund assets to provide to the participants Monks' solicitation materials, rather than charging the cost to Monks himself.

Section 404(a)(1)(A) of ERISA, 29 U.S.C. § 1104(a)(1)(A), sets forth the duties of an ERISA fiduciary as follows:

> (a)(1) Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
>
> (A) for the exclusive purpose of:
>
> (i) providing benefits to participants and their beneficiaries; and
>
> (ii) defraying reasonable expenses of administering the plan; ....

For payment of the costs of the distribution of Monks proxy solicitation with the Fund assets to be proper under ERISA, therefore, the expenditure would have to be "solely in the interest of the participants" and "for the exclusive purpose of ... providing benefits to participants" and "defraying reasonable expenses of administering the plan." The distribution costs for Monks' material do not fall into this category.

In *Acosta v. Pacific Enterprises,* 950 F.2d 611 (9th Cir.1991), the Court of Appeals for the Ninth Circuit held that an ERISA fiduciary has no duty to assist a board candidate in his solicitation efforts by providing the candidate with a list of the names of plan participants and the size of their stockholdings. *Acosta* makes clear that it is outside the scope of an ERISA fiduciary's limited role even to supply to a board candidate a list of plan participants, where the candidate is willing to finance

**984**

the solicitation of those participants. Providing such a list for proxy solicitation purposes does not fall within the statutory criteria of Section 404(a)(1)(A)(i) and (ii). It follows, therefore, that an ERISA fiduciary would be prohibited from spending $300,-000 of plan money to mail a candidate's proxy solicitation. The purpose of such an expenditure is unrelated to providing benefits to the participants under the plan.

■ For ERISA purposes, "benefits" consist only of a "right to receive monies," and do not include "the right to vote" in a corporate election. *Acosta* at 619. Further, the only clear beneficiary of such Fund expenditure in the instant case would have been Monks himself. Such an expenditure could in no way be characterized as a payment made "solely in the interest of participants" as required by Section 404(a)(1). Therefore, the refusal to spend Fund assets to assist a board candidate in his proxy solicitation efforts is not a violation of ERISA.

Accordingly, the motion of defendant Sears for summary judgment with respect to Count IV will be granted.