**PENSION BENEFIT GUARANTY CORPORATION, Plaintiff,**

v.

**Walter L. ROSS, et al., Defendants.**

**No. C–89–506–G.**

United States District Court, M.D. North Carolina, Durham Division.

Dec. 19, 1991.

Carol Connor Flowe, John H. Falsey, Philip R. Hertz, Lois Bruckner Parks, Thomas H. Gabriel, Office of Counsel, Pension Benefit Guar. Corp., Washington, D.C., for plaintiff.

Alston & Bird by William C. Humphreys, Jr., Gregory C. Braden, Atlanta, Ga., Maxwell, Martin, Freeman & Beason, P.A., by John Martin, Durham, N.C., Smith, Gambrell & Russell by John G. Despriet, Atlanta, Ga., for defendants.

## MEMORANDUM OPINION

ERWIN, Chief Judge.

This matter is before the court upon motions for summary judgment by defendants Donaldson & Co., Inc. and Invesco Services, Inc. The defendants moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

One month after the defendants' motion, plaintiff Pension Benefit Guaranty Corporation moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure against defendants Donaldson & Co., Inc. and Invesco Services. The parties have fully briefed their positions, and oral arguments have been heard. The matter is now ready for a ruling. The court grants defendant Invesco Services, Inc.'s motion for summary judgment and denies the motion as to defendant Donaldson & Co., Inc. The court denies the motion of plaintiff Pension Benefit Guaranty Corp.

### Facts

Procedural Background

Plaintiff Pension Benefit Guaranty Corporation (PBGC) brought this action on July 21, 1989 under Titles I and IV of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1168,

1301–1461, *as amended by* the Single–Employer Pension Plan Amendments Act of 1986 (SEPPA), Pub.L. No. 99–272, Title XI, 100 Stat. 237–282 (1986); and the Pension Protection Act (PPA), Pub.L. No. 100–293, Title IX, 101 Stat. 1330–1361 (1987). The action was brought against Donaldson & Co., Inc., (Donaldson); Invesco Capital Management Co., Inc. (Invesco Capital); and Walter Ross (Ross), the former trustee of two tax-qualified defined benefit pension plans; the RPC Corporation Amended and Restated Pension Plan for Hourly Employees; and the RPC Corporation Amended and Restated Pension Plan for Salaried Employees (the Hourly Plan and the Salaried Plan, or collectively the Plans). The Plans were established for the benefit of employees of RPC Corporation (RPC).

The PBGC complaint alleged that defendants Donaldson and Invesco Capital actively and knowingly participated in certain alleged illegal transfers of monies from the Plans at the direction of defendant Ross in violation of ERISA. The PBGC is statutory trustee of the Plans.

Donaldson and Invesco Capital moved this court to dismiss the claims against them pursuant to Fed.R.Civ.P. 9(b) and 12(b)(6). This court granted the motion with respect to Invesco Capital and denied the motion with respect to Donaldson.

Following this court's dismissal of Invesco Capital from the case, the PBGC undertook discovery. The discovery adduced additional facts concerning Invesco Services, Inc., a subsidiary of Invesco Capital, Inc. After completion of discovery, the PBGC sought and was granted leave to amend the complaint to join Invesco Services, Inc. (Invesco Services).

In August 1991, this court granted a verified motion by defendant Walter Ross. The motion allowed counsel for Ross to withdraw from his representation. Hence, when oral argument was heard in the case in October 1991, the position of Walter Ross was not heard. Accordingly, Ross' status will not be addressed in this memorandum opinion.

## Factual Background

In 1983, Ross and others known and unknown to the court, established an acquisition company called "Marcongale, Inc. of Delaware". The company was formed for the primary purpose of purchasing the stock of RPC in a leveraged buy-out, according to the affidavit of defendant Ross. At the time of the buy-out, Ross acquired sixty-five percent of the RPC stock.

The RPC is one of many agencies that participate in the administration of defined benefit pension plans regulated by ERISA. Under ERISA and through the PBGC, workers in covered plans will receive certain basic benefits even if their retirement plans terminate with insufficient assets to pay those benefits.

The original purchase price of the company was an estimated $4 million, of which the National Westminster Bank provided approximately $3.1 million in financing for the company to an account at the National Westminster Bank's New York office in the name of "Marcongale, Inc.". Cash, real estate, accounts receivable, and inventory of RPC were used as security for the loan. By 1986, Ross and his associates had completed the buy-out and owned RPC. The RPC owned two plans, an hourly retirement plan, and a salaried plan.

Prior to February 1986, the assets of two retirement plans were held in trust by the National City Bank of Cleveland, Ohio. The trust agreements authorized National City Bank to exercise discretionary authority and control with respect to the management and disposition of those assets. The Plans were non-directed which meant that the trustee was under a legal obligation to invest the assets of the plan as a fiduciary.

On February 11, 1986, RPC, through its Board of Directors, resolved to convert the Plans from non-directed to directed. This meant that the trustee was required to follow the direction of the plan fiduciary with respect to investments. Responsibility for direction of the Plans was vested in a committee headed by defendant Ross.

On February 19, 1986, Ross and a Donaldson broker, met with FirstAtlanta Bank to transfer the Plan's assets from National

City Bank to FirstAtlanta. Donaldson was the brokerage firm utilized by the RPC. At this same meeting, it was decided that the assets would be invested in mutual funds of the EBI Portfolio Management Program which was administered by defendant Invesco Services.

On February 20, 1986, FirstAtlanta received $468,700 for the Salaried Plan, and $183,100 for the Hourly Plan. FirstAtlanta then transferred $456,300 from the Salaried Plan and $178,100 from the Hourly Plan to Invesco Service's clearing account at Citizens & Southern Bank (C & S) for purchase of shares in the EBI Mutual Funds. The remaining funds were retained by FirstAtlanta in the Plans' accounts for payment to retiree benefits.

Additionally on February 20, 1986, defendant Ross effected a withdrawal of $126,000 from the Salaried Plan and a withdrawal of $89,000 from the Hourly Plan. The funds were to be transferred as a loan to RPC from over funded Plans. Ross explained that the money was needed for corporate purposes.

On May 9, 1986, a second set of withdrawals from the Salaried Plan yielding $50,000 to RPC and $1,360 to Invesco was effected. The reason for withdrawing this money was for corporate purposes. The request was made by defendant Ross.

In late May 1986, FirstAtlanta discovered the transfers by Ross. FirstAtlanta notified the defendants that the diversion may have been prohibited under ERISA. The bank tried unsuccessfully to recover the assets. Neither FirstAtlanta nor National Westminster Bank is named co-defendant in this action by PBGC.

On July 24, 1986, three of RPC's creditors filed an involuntary petition against RPC for liquidation under Chapter 7 of the Bankruptcy Code. On July 31, 1986, the assets of RPC were sold. On July 31, 1986, the Plans were terminated as of July 31, 1986, and the PBGC was appointed trustee of the Plans. As of the date of termination, the Plans lacked sufficient funds to provide for the benefits owed to the participants under the Plans, including benefits guaranteed under Title VI of ERISA.

### Discussion of Law
Defendant Invesco Services, Inc.'s Liability

Defendant Invesco Services, Inc. is entitled to summary judgment on each of the three grounds asserted by PBGC. First, Invesco did not have actual knowledge of any alleged breach of fiduciary duty by defendant Ross. Second, Invesco did not participate in a prohibited transaction with regard to the Plans. Finally, Invesco was not unjustly enriched by means of any relationship with the Plans.

The theory upon which the PBGC holds defendant Invesco Services liable is one of knowing participation in a breach of fiduciary duty by defendant Walter Ross. In *Pension Benefit Guaranty Corp. v. Ross*, 733 F.Supp. 1005 (M.D.N.C.1990), this court followed basic principles of trust law. In so doing, we held that the essential elements of a claim against a non-fiduciary such as Invesco Services for participation in a fiduciary's breach are: "(1) an act or omission which furthers or completes the breach of trust by the trustee; and (2) knowledge at the time that the transaction amounted to a breach of trust or the legal equivalent of such knowledge." (quoting *Freund v. Marshall & Ilsley Bank*, 485 F.Supp. 629, 642 (W.D.Wis.1979)).

At worst, Invesco Services was a careless or negligent non-fiduciary caught in the middle of a series of monetary transactions by defendant Ross. The case precedent in this area of law does not indicate that unwitting participation in a breach of fiduciary duty is ground for liability. Similarly, no case law establishes liability for a nonfiduciary based on simple carelessness or negligence.

The PBGC has failed to show that Invesco Services participated in a substantial way in defendant Ross's withdrawal of Plan assets which were invested in mutual funds distributed by Invesco. The PBGC must prove through affidavits and other documents that Invesco Services had knowledge that the withdrawals were improper. The record in this case is devoid of

support for the proposition that Invesco Services had any knowledge of any impropriety on the part of Ross.

It is clear that the Invesco Services representative, Wanda Taylor, never asked whether the funds being transferred by Ross were being transferred for corporate purposes or whether Ross was borrowing money for personal or other use. This oversight alone, however, does not impute liability to Invesco Services.

Invesco Services was the holder of an investment plan, the EBI fund. Invesco Services was taking instructions from Donaldson, the authorized broker of the Plans. The instructions that Donaldson relayed to Invesco appear to be routine and give no hint that improper conduct was occurring. Invesco merely complied with requests by Donaldson. This conduct in and of itself does not impute knowing participation in a fiduciary's breach to Invesco Services.

■ Insistence on evidence of knowledge as a requirement of allowing a claim against a non-fiduciary such as Invesco Services is consistent with accepted principles of trust law. The congressional intent in enacting ERISA was to make applicable the law of trusts. *Freund,* 485 F.Supp. at 641 (1979). Following the rationale of trust law, PBGC has failed to prove knowing participation or knowledge of wrongful acts by Invesco Services.

■ Next, PBGC alleges that Invesco violated Section 406(a)(1)(D) of ERISA, 29 U.S.C. § 1106(a)(1)(D) (West 1985), by engaging in a prohibited transaction with the Plan and by obtaining $1,359.48 in contingent deferred sales charges from assets of the Plan. In other words, the PBGC alleges unjust enrichment by Invesco as a result of relationship with the Plan.

In order for this allegation to be of merit, PBGC must show that Invesco Services is a "party in interest." We do not find facts sufficient to support this allegation by the PBGC. Invesco was the distributor of the mutual funds of the EBI program. Invesco had no control over the management of the Plans. Invesco provided no advice of any kind to the Plans. Invesco did not even have decision making capability over the EBI program. Accordingly, Invesco Services cannot be classified as a "party in interest" and, hence, did not participate in a prohibited transaction in violation of § 406(a)(1)(D) of ERISA.

■ Finally, the PBGC alleges that relief is found against Invesco Services pursuant to Section 502(a)(3) of ERISA. This section reads as follows:

(a) Persons empowered to bring a civil action. A civil action may be brought—

(3) By a participant, beneficiary or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to address such violations or (ii) to enforce any provisions of this title or the terms of the plan.

29 U.S.C. § 1132(a)(3) (West 1985).

According to its express terms, Section 502(a)(3) is limited to equitable relief. Since Invesco did not benefit in any way from the actions involved, we believe this section of the ERISA statute is inapplicable in this case.

For the above stated reasons, Invesco Services, Inc. is entitled to judgment as a matter of law on each of the claims asserted by the PBGC. Invesco Services did not knowingly participate in any breach of fiduciary duty by defendant Ross. Hence, there is no violation of Sections 404 and 406 of ERISA. Invesco did not engage in a prohibited transaction with respect to the Plan, hence there is no violation of Section 406(a)(1)(D) of ERISA. Finally, since there is no evidence of unjust enrichment by Invesco Services, there can be no violation of Section 502(a)(3) of ERISA.

Defendant Donaldson & Co., Inc.'s Liability

■ The major difference between defendant Donaldson's and defendant Invesco Services' liability is the relationship of the parties to defendant Ross. The law of trusts recognizes a cause of action against a third person for their knowing participation in a breach of trust. *See Freund v. Marshall & Ilsley Bank,* 485 F.Supp. 629 (W.D.Wis.1979); Restatement (Second) of

**420**

Trusts § 326 comment (a) (1959). The facts of this case leave substantial question as to the knowing participation of Donaldson.

First of all, Donaldson is a co-fiduciary while Invesco Services is a non-fiduciary. Co-fiduciary liability is significantly broader than non-fiduciary liability, in that a co-fiduciary may be held liable whether or not he actually knows or participates with other fiduciaries in the breach if, by his failure to adhere to the standards of due care and prudence imposed on him under Section 404 of ERISA, he enables the other fiduciaries to commit the breach. *See* Section 405(a)(2) of ERISA, 29 U.S.C. § 1105(a)(2).

The relationship of Donaldson and Ross suggests knowing participation in violation of Section 409 of ERISA. Ross testified that he sought out Donaldson's expertise to ask what kind of pension plan the company had and to see what could be done with the Plans. A Donaldson employee, Stacy Jacobs, actively solicited Ross' business on behalf of Donaldson. Jacobs and another Donaldson employee, Terry Miller, went to the RPC office to give a presentation before Ross. During this presentation, the EBI funds of Invesco were recommended as an investment vehicle. The facts do not, however, indicate that Invesco knew of this presentation or recommendation.

Unlike Invesco, Donaldson specifically asked for what purposes the monies were being borrowed. When Donaldson learned that the monies were for corporate purposes, Donaldson considered this an unusual request, yet did nothing to investigate further. Additionally, the fact that defendant Ross was claiming residual assets should have been a clear misstatement to defendant Donaldson in lieu of the relationship between the two.

Applying a knowing participation standard, the facts do not warrant a summary judgment motion for Donaldson. There are factual issues coupled with the relationship of Donaldson and Ross that are best decided by a fact finder. Hence, Donaldson's motion for summary judgment is denied.

*Conclusion*

In light of the foregoing, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that defendant Invesco Services' motion for summary judgment is granted as to all counts alleged by PBGC. Defendant Donaldson's motion for summary judgment is denied, as is PBGC's motion for summary judgment.