The **INTERNATIONAL BROTHERHOOD OF PAINTERS AND ALLIED TRADES UNION AND INDUSTRY PENSION FUND, et al., Plaintiffs,**

v.

**William A. DUVAL, et al., Defendants.**

**Civil Action No. 92–1099.**

United States District Court, District of Columbia.

April 3, 1996.

Robert Patrick Gallagher, Groom & Nordberg, Chartered, Washington, DC, Jeffrey E. Hartnett, Bartley, Goffstein, Bollato and Lange, St. Louis, MO, Mark W. Weisman,

Suelthus & Kaplan, St. Louis, MO, for plaintiffs.

Gerald M. Feder, Paul Limmiatis, Feder & Associates, P.C., Washington, DC, for William A. Duval.

Michael William Solinsky, Arlington, VA, Charles Roe Mills, Kirkpatrick & Lockhart, L.L.P., Washington, DC, for Shearson Lehman Brothers, Inc.

Eugene I. Goldman, Paul Joseph Pantano, Jr., Elizabeth Parry Fohrman, McDermott, Will & Emery, Washington, DC, Charles Roe Mills, Kirkpatrick & Lockhart, L.L.P., Washington, DC, for Kent D. Kitchel.

Gerald M. Feder, Feder & Associates, P.C., Washington, DC, for William A. Duval.

## *MEMORANDUM OPINION AND ORDER*

JOYCE HENS GREEN, District Judge.

The plaintiffs [1] initiated this action pursuant to Sections 409 and 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), codified at 29 U.S.C. §§ 1001 *et seq.* (1994), and the Investment Advisors Act of 1940 ("IAA"), codified at 15 U.S.C. §§ 80b–1 *et seq.* (1994), against Shearson Lehman Brothers, Inc. ("Shearson"), Kent D. Kitchel ("Kitchel"), and William A. Duval ("Duval"). The complaint alleges that the defendants breached their fiduciary duties and engaged in transactions prohibited by ERISA and the IAA. Presently pending are Defendant Shearson's motion to dismiss or, in the alternative, for summary judgment ("Motion for Summary Judgment"); Defendant Kitchel's motion for summary judgment ("Kitchel's Motion for Summary Judgment"); and the plaintiffs' and Defendant Duval's joint consent motion to dismiss and for stipulated agreement ("Consent Motion to Dismiss"). For the reasons explained below, Shearson's motion will be denied in part and granted in part; Kitchel's motion will be granted; and the consent motion to dismiss and for stipulated agreement will not be approved. Partial summary judgment will be entered for Defendant Shearson on Count VII, and summary judgment will be entered for Defendant Kitchel on Counts V, VI and VII. Judgment Orders shall be issued separately this date.

### Background

The following facts are undisputed. During all times relevant, Defendant Shearson served as the Plan's investment manager. Defendant William A. Duval was the General President of the International Brotherhood of Painters and Allied Trades, and he acted as a trustee and co-chairman of its $1 billion pension trust fund (the Plan), which was established to provide benefits to retired union employees. Defendant Kent D. Kitchel is Duval's wife's son and was, during all times relevant, an employee of Defendant Shearson and the financial consultant to the Plan.

In 1985, the plaintiffs endeavored to identify and select an new investment manager for the Plan. After retaining an expert consultant, the Plan's Investment Committee, which included Duval, engaged in a review of numerous firms and selected two firms as finalists: Dreman & Embry, Inc. ("Dreman") and Defendant Shearson.[2] On December 12, 1985, after presentations by Dreman and

---

**1.** The plaintiffs are the International Brotherhood of Painters and Allied Trades Union and Industry Pension Fund ("Plan") and originally included most of the Plan's trustees: A.L. Monroe, Walter Raftery, Michael Monroe, Patrick L. Lane, Richard Zack, Fred Hagen, James Damery, Guy Leber, Armando Colafrancheschi, Martin DeVries, Richard Bobbe, Norman Strauss, Ralph Trallo, Harold Witkin, John Mills, Robert McMullan and Richard A. Grund ("trustees"). On November 7, 1994, the plaintiffs filed a suggestion of death of Harold Witkin.

**2.** The trustees actually selected Hutton Capital Management ("HCM"), a division of E.F. Hutton, Inc., to manage the Plan. However, in January

1988, Shearson Lehman Brothers, Inc., acquired the E.F. Hutton Group, Inc., pursuant to a merger agreement. During the pendency of the instant litigation, Shearson merged with Smith Barney, forming Smith Barney Shearson Inc., which is presently the corporate defendant in this matter. *See* Shearson's Reply, at 1 n. 1. Adopting the approach used by the parties, *see* Shearson's Motion for Summary Judgment, at 2 n. 1; Plaintiff's Opposition, at 1 n. 3; Shearson's Reply, at 1 n. 1, all references in this opinion will be to "Shearson" as the investment manager whether HCM or Shearson was the actual manager at the relevant time.

Shearson, the Board of Trustee's selected Shearson. On December 13, 1985, Shearson was notified that it had been retained to manage the plan, and, on December 24, 1985, Shearson advised the depository bank of its fiduciary status. Shearson managed the Plan until approximately November 1991, when the agreement was terminated.

The essence of the complaint arises from Kitchel's connection to Duval. The plaintiffs allege that Duval knew or should have known that Kitchel would receive compensation in connection with Shearson's retention as Plan manager. The plaintiffs contend that the defendants exploited and then improperly concealed Kitchel's connection to Duval and his status as a financial consultant to the Plan, which status allowed Kitchel to derive compensation from fees generated by Shearson's contract to manage the Plan. The plaintiffs allege, and Duval denies, that Duval actively participated in the discussions regarding Shearson's selection and that he actively lobbied for retaining Shearson.

The plaintiffs have filed a nine-count complaint. Counts I–VI allege that the defendants breached their fiduciary duties owed to the Plan and engaged in transactions prohibited by ERISA (Counts I and II are against Duval, Counts III and IV are against Shearson, and Counts V and VI are against Kitchel). Count VII asserts that the defendants are liable for the breach of fiduciary duties by their cofiduciaries to the Plan. Count VIII is an alternative claim for nonfiduciary liability against Kitchel, which claim alleges that Kitchel, as a nonfiduciary, participated in Shearson's and Duval's breaches of their fiduciary duties. Finally, Count IX alleges that Shearson violated the IAA.

In their answers, the defendants counterclaimed against the trustee plaintiffs, seeking contribution and indemnification. Duval also counterclaimed against Trustee A.L. Monroe, claiming that Monroe breached his fiduciary duty because he was aware that Shearson employed a person with a family relationship to Duval, but nevertheless failed to advise the other trustees. In its claim, Shearson also alleged that the Plan was liable for restitution due to the increase in the Plan's value while under Shearson's management.

On April 14, 1994, this Court ruled on the pending motions. The Court granted the plaintiffs' motion to dismiss the defendants' claim for contribution and indemnification; denied Shearson's restitution claim for the increase in the value of the Plan; denied Plaintiff A.L. Monroe's motion for summary judgment on Duval's counterclaim; granted Plaintiff Richard A. Grund's motion for partial summary judgment on the defendants' counterclaims; granted the plaintiffs' motion to amend their name; granted the plaintiffs' motion for limited discovery; and denied Kitchel's motion for judgment on the pleadings. After limited discovery, the instant motions followed.

### Discussion

Summary judgment is appropriate when there is "no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are any genuine issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255, 106 S.Ct. at 2513. At the same time, however, Rule 56 places a burden on the nonmoving party to "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (internal quotations omitted). A fact is material if its resolution would affect the outcome of the litigation. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

To survive a motion for summary judgment, the nonmovant must offer sufficient evidence and designate specific facts to show that there is a reason for trial. The

role of the Court is not to weigh the evidence, but to determine whether genuine issues of material fact exist for trial. *Abraham v. Graphic Arts Int'l Union*, 660 F.2d 811, 814 (D.C.Cir.1981). Faced with a motion for summary judgment, the nonmoving party must offer more than mere allegations. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510. If the material facts proffered by the nonmoving party are subject to diverse interpretations, summary judgment is not available. *Tao v. Freeh*, 27 F.3d 635, 638 (D.C.Cir. 1994). Any doubts must be resolved in favor of the nonmoving party, *Abraham*, 660 F.2d at 815, and the nonmoving party is entitled to all justifiable inferences. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

**Shearson's Motion for Summary Judgment**

Shearson seeks summary judgment in its favor on Counts III, IV, VII and IX.

**1. Count III.**

In Count III, the plaintiffs claim that Shearson violated Section 404(a)(1) of ERISA, 29 U.S.C. § 1104(a)(1), because Shearson failed to disclose and deliberately concealed Kitchel's connection to the Fund and by paying Kitchel compensation from Plan assets. Amended Complaint, at ¶ 47. Shearson offers several arguments upon which, it asserts, it is entitled to summary judgment. These arguments are unpersuasive and Shearson's motion will be denied.

First, Shearson contends that because there is no suggestion that the investment portfolio was mismanaged, there can be no liability under Section 404(a)(1). Motion for Summary Judgment, *supra*, at 24–25. Second, Shearson argues that its liability under ERISA's Section 404(a)(1) arose only after it began to manage the Fund on January 1, 1986, and that it cannot be held liable for any conduct occurring prior to December 31, 1985. *Id.* at 25. Finally, Shearson avers that because the Fund suffered no investment losses and because the fees that Shearson was paid were reasonable, there can be no Section 404(a)(1) liability. *Id.* at 25–27.

Under Section 404(a)(1) of ERISA, a fiduciary must discharge its duties in managing an investment plan "solely in the interests of the participants and beneficiaries ... with the care, skill, prudence, and diligence" that would be employed by a "prudent [person] acting in a like capacity and familiar with such matters." ERISA, Section 404(a)(1), codified at 29 U.S.C. § 1104(a)(1); *see NLRB v. Amax Coal Co.*, 453 U.S. 322, 332–33, 101 S.Ct. 2789, 2796, 69 L.Ed.2d 672 (1981); *Fink v. Nat'l Sav. & Trust Co.*, 772 F.2d 951, 955 (D.C.Cir.1985); *Leigh v. Engle*, 727 F.2d 113, 125 (7th Cir.1984). The fiduciary's obligations are based on both the specific statutory charge and the common law of trusts. *See Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 110–11, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989); *Acosta v. Pacific Enterprises*, 950 F.2d 611, 618 (9th Cir.1991); *Eddy v. Colonial Life Ins. Co.*, 919 F.2d 747, 750 (D.C.Cir.1990).

The duty of loyalty owed by ERISA fiduciaries is broad, *Eddy*, 919 F.2d at 750–51, and includes a duty to disclose material information. *See Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 140–41 n. 8, 105 S.Ct. 3085, 3089–90 n. 8, 87 L.Ed.2d 96 (1985) (compiling floor statements by ERISA drafters describing congressional concerns, which include abuses arising from fraud and nondisclosure); *Eddy*, 919 F.2d at 750 ("[t]he duty to disclose material information is the core of a fiduciary's responsibility"). The fiduciary's duty of disclosure is not limited to those disclosures mandated by the statute, *see Acosta*, 950 F.2d at 618, and deceptive conduct, such as lying, is clearly inconsistent with the duty of loyalty owed by an ERISA fiduciary. *See Varity Corp. v. Howe*, — U.S. —, —, 116 S.Ct. 1065, 1073, 134 L.Ed.2d 130 (1996). In short, the fiduciary provisions of ERISA were designed to prevent a fiduciary "from being put into a position where [it] has dual loyalties, and, therefore, [it] cannot act exclusively for the benefit of a plan's participants and beneficiaries." *Amax Coal Co.*, 453 U.S. at 334, 101 S.Ct. at 2796.

Summary judgment on Count III is precluded, because the plaintiffs have offered sufficient evidence to establish the existence of genuine issues of material fact. Based on the materials submitted by the plaintiffs, a

reasonable factfinder could find that Shearson violated its fiduciary obligations under Section 404(a) by concealing material facts such as Kitchel's connection to Duval and Kitchel's role as a financial consultant to the Plan. The evidence allows for the reasonable inference that Kitchel's connection to Duval, his stepfather and a Plan fiduciary, was well known to Shearson both before and after it became a fiduciary. There is evidence that Kitchel played a key role in bringing the plaintiffs' business to Shearson; that the link to Duval was not insignificant; and that Shearson was not only aware of the link, but capitalized upon it by using Kitchel to "put out fires" when it served Shearson's interests.

Based upon the plaintiffs' proffer, a genuine issue of material fact exists as to whether Shearson concealed Kitchel's role and existence from the plaintiffs. The Hagerman memorandum of December 31, 1985, which was drafted shortly after Shearson was first retained, states: "On correspondence, *do not cc Kent Kitchel—use blind copies. 'bcc'.*" Plaintiffs' Opposition, *supra*, at Ex. 12 (emphasis in original). Drafted by one of Shearson's senior vice presidents after a meeting with Kitchel and Duval, this memo to file supports an inference that Defendant Shearson intended to conceal the Kitchel–Duval connection. Moreover, there is evidence that Shearson's acts to conceal the Kitchel connection were ongoing. Three and a half years after Shearson was retained, Robin Pinkham, Plan Account Manager, stated:

> As you know, Kent Kitchel is my source of information on IBPAT. And he implores us never to mention his name in connection with this business. Noone (sic) at the Union knows of his relationship with Mr. Duval and the account, and he would like to keep it that way.

*Id.* at Ex. 37 (Memorandum of Robin Pinkham of June 26, 1989).

A reasonable factfinder could determine that Kitchel's own words to one of Shearson's account managers speaks volumes as to what Shearson knew and what it did or did not do with that knowledge:

> There have been several times throughout the history of this account when events

(results) have called for the client to question retaining you (us) as the manager. Each time, including now, you (and I) have been dispatched to put out the fires. You're aware of my rapport with Mr. Duval and we both know it is in *our* best interests to try and not rock the boat.

*Id.* at Ex. 39 (Letter of March 12, 1991, from Kent D. Kitchel to Robin Pinkham, Plan Account Manager) (emphasis in original).

The plaintiffs have also offered evidence regarding the negotiations between Shearson and the plaintiffs' lawyer, which evidence is probative of Shearson's intent to conceal the Kitchel connection. During the negotiations and in the presence of Shearson's employees, the plaintiffs' attorney Barr deleted language in the Investment Agreement that would have provided for compensation to a financial consultant. Barr did so, the plaintiffs contend, because Barr believed that no financial consultants, such as Kitchel, would be involved in Shearson's administration of the Plan. Shearson, however, remained silent. While Shearson's silence occurred prior to the time it became a fiduciary, *see infra*, a reasonable factfinder could believe that it reflected Shearson's intent to conceal the use of Kitchel who had strong, but secret, ties to Duval, Plan co-chair and a fiduciary who played a role in Shearson's selection and continued retention.

While Kitchel may not have actively managed the plan, provided advice or executed any discretionary authority, his role was not insignificant. He was the conduit to Duval, and the plaintiffs have offered evidence that allows for the reasonable inference that Shearson endeavored to exploit this connection and conceal its existence from the trustee plaintiffs. Such exploitation and concealment, if proven at trial, are actions that are facially inconsistent with a fiduciary's duty of loyalty under ERISA, Section 404(a). To meet their burden as nonmovants, the plaintiffs have offered sufficient evidence to establish genuine issues of material fact regarding whether Shearson breached its fiduciary obligations under ERISA by failing to disclose, and then by concealing, the Kitchel–Duval connection and by paying compensation (out

of Plan assets) to Kitchel for his services to the Plan.

 Shearson's arguments to the contrary are unpersuasive. Shearson contends that there was no investment loss or mismanagement, thus Section 404(a)(1) is inapplicable. Contrary to Shearson's claim, Section 404(a)(1)'s charge is not limited to investment management decisions, but applies to whether Shearson managed the Plan "solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). It would appear that under Shearson's interpretation, Section 404(a)(1) would not be violated by a fiduciary's intentional misrepresentations to cofiduciaries, participants and beneficiaries as long as the fiduciary's investment management decisions were otherwise sound. Shearson's apparent view is inconsistent with the plain text of the Section 404(a)(1) that a fiduciary "shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." While the drafters of ERISA were concerned with the misuse and mismanagement of plan assets, *see Russell,* 473 U.S. at 140 n. 8, 105 S.Ct. at 3085 n. 8, a fiduciary's duty of loyalty under ERISA is broader than mere plan management. A fiduciary is charged with a duty of *undivided* loyalty, not just responsibility for sound stock-picking and proper bookkeeping.

The plaintiffs have offered evidence from which a reasonable factfinder could determine that Shearson's loyalties were split and that Shearson's efforts to conceal material facts from the plaintiffs constitute a breach of Section 404(a)(1). Additionally, whether there has been a loss to the Plan because of Shearson's alleged breach of fiduciary duty is an issue that the parties reasonably dispute. If the factfinder were to determine that a breach occurred, the question of damages and remedy would be addressed as appropriate. *See, e.g., Etter v. J. Pease Constr. Co., Inc.,* 963 F.2d 1005, 1009 (7th Cir.1992).

Finally, Shearson argues that it bears no liability as a fiduciary for acts committed prior to the time it became a fiduciary. While citing only to its own brief in which it argues that it is entitled to summary judgment on the Section 406 Count (based on a Department of Labor advisory opinion), Shearson claims that because its fiduciary obligations to the Plan did not arise until January 1, 1986, the date on which it started to manage the Plan, it cannot be held liable under ERISA for acts occurring prior to that date. Shearson's argument appears to suggest that ERISA condones misrepresentation and concealment of material facts by prospective fiduciaries as long as such conduct is well timed. Shearson's argument will be rejected.

Section 404(a) of ERISA imposes liability upon a fiduciary that breaches its fiduciary duty. 29 U.S.C. § 1104(a). While Section 409(b), 29 U.S.C. § 1109(b),[3] appears to prohibit a fiduciary from being held liable for breaches that occurred prior to the time that the fiduciary attained fiduciary status, this Court is aware of no authority (and Shearson has cited none) that would allow Section 409(b) to be used as a shield to protect a prospective fiduciary from liability arising from its own misconduct, such as the concealment of material facts during the negotiation of an investment management contract which led to fiduciary status. Despite a facially clear command, even Section 409(b) has been construed to allow for fiduciary liability where the conduct bore a sufficient nexus to a person's past or prospective fiduciary status. *See, e.g., Mathis v. American Group Life Ins. Co.,* 873 F.Supp. 1348, 1358 (E.D.Mo.1994) (recognizing that Section 409(b) may be inapplicable if the fiduciary had knowledge of, or role in, predecessor's acts or omissions before it became fiduciary); *McDougall v. Donovan,* 552 F.Supp. 1206, 1210 (N.D.Ill.1982) (ongoing breach of fiduciary duty may exist for acts that occurred prior to fiduciary status, because of breach's continuing nature); *Baeten v. Van Ess,* 446 F.Supp. 868, 869 (E.D.Wis.1977) (excusing defendant trustee bank because it had no knowledge of, or role in, breaches by predecessor).

---

**3.** Section 409(b) provides: "No fiduciary shall be liable with respect to a breach of fiduciary duty under this subchapter if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary." 29 U.S.C. § 1109(b).

Nevertheless, whether Shearson is exempt from liability for its actions and omissions prior to its retention is largely academic, because immediately upon becoming a fiduciary, Shearson was obligated to disclose the extant state of affairs with the Plan, including disclosure of material omissions or misrepresentations, if any, that occurred during the negotiations for the investment management contract. *Cf.* Department of Labor Advisory Opinion No. 76–95 (Sept. 30, 1976), *reprinted in* 1976 WL 5114, at *1 (E.R.I.S.A.) (although fiduciary may be exempt from liability arising from predecessor's breach, upon assuming fiduciary status, the fiduciary was obligated to take whatever action was reasonable and appropriate under the circumstances to remedy the prior actions: "Failure to take such action would constitute a separate breach of fiduciary responsibility by the successor fiduciary."). If the plaintiffs are able to prove at trial that the defendants exploited and then concealed both the existence of the Kitchel–Duval connection and Kitchel's role in servicing the Plan, and that such facts were material, liability under Section 404(a)(1) would appear to be clear. Because genuine issues of material fact exist regarding Shearson's actions and omissions prior to (and after) it assumed its fiduciary status, summary judgment is precluded. Shearson's motion will be denied.

2. Count IV.

In Count IV, the plaintiffs allege a violation of Section 406 of ERISA, claiming that Shearson engaged in a prohibited transaction when it paid Kitchel a portion of the fees it received from the Plan, failing to reveal that Kitchel was the son of Duval's wife. In arguing for dismissal of Count IV and for summary judgment in its favor, Shearson first contends that Section 406 is not implicated because Kitchel was an employee and not a party in interest.[4] *See* Motion for Summary Judgment, *supra*, at 12. Second, Shearson argues that Section 406 cannot be violated merely by paying compensation to an employee out of the fees it received for managing the Plan. *See id.* at 13. Finally,

Shearson avers that Section 406 does not proscribe paying Kitchel reasonable compensation, even if that compensation originated from fees paid to Shearson for managing the Plan. *See id.* at 19–20. Shearson's arguments fail. The motion for summary judgment will be denied, because the plaintiffs have stated cognizable claims and genuine issues of material fact are present.

Section 406 of ERISA prohibits certain transactions and establishes two sets of rules governing such transactions. In relevant part, Section 406 provides

**(a) Transactions between plan and party in interest**

(1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—

\* \* \* \* \* \*

(C) furnishing of goods, services, or facilities between the plan and a party in interest;

(D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan; or

. . . . .

**(b) Transactions between plan and fiduciary**

A fiduciary with respect to a plan shall not—

(1) deal with the assets of the plan in his own interest or for his own account,

(2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or

. . . . .

29 U.S.C. §§ 1106(a), 1106(b).

In general, Section 406(a) addresses a fiduciary's financial transactions with parties in

---

4. While Shearson contends that Kitchel was not a party in interest, in its Answer, it, in fact, admitted that he was a party in interest under 29 U.S.C. § 1002(14)(H). *See* Shearson's Answer to Amended Complaint, at ¶ 21.

interest. Subject to the exceptions of Section 408(b), a fiduciary is prohibited under Section 406(a) from entering into a transaction with a party in interest if the fiduciary knows or should know that the transaction would, directly or indirectly, involve the furnishing of services between the plan and a party in interest, *see* 29 U.S.C. § 1106(a)(1)(C), or would, directly or indirectly, result in the transfer of plan assets to the party in interest. 29 U.S.C. § 1106(a)(1)(D). *E.g., New York State Teamsters Council v. Estate of DePerno,* 18 F.3d 179, 182 (2nd Cir.1994). Although the broad definition of a party in interest includes, *inter alia,* fiduciaries, persons who provide services to the Plan and their employees, *see* 29 U.S.C. §§ 1002(14)(A), (B) & (H),[5] ERISA exempts reasonable compensation paid for "services necessary for the establishment and operation of the plan." Section 408(b)(2), 29 U.S.C. § 1108(b)(2); *see* 29 C.F.R. §§ 2550.408b–2(a) & (e) (1995). This exemption, applicable only to those transactions prohibited by Section 406(a), *see* 29 C.F.R. § 2550.408b–2(a), is necessary precisely because the proscription of Section 406(a) is so strict.

■ Section 406(b) is broader in scope, proscribing self-dealing and certain transactions by fiduciaries. Whereas Section 406(a) is limited to transactions with *parties in interest,* Section 406(b) is more expansive, proscribing self-dealing or transactions involving *parties with interests that are adverse* to those of the Plan. *See Reich v. Compton,* 57 F.3d 270, 289 (3rd Cir.1995). Section 406(b) imposes a duty of undivided loyalty upon fiduciaries, making clear that in the exercise of their authority, fiduciaries may not involve parties with adverse interests. *See* 29 C.F.R. § 2550.408b–2(e)(1); *Compton,* 57 F.3d at 287. Section 406(b) is broadly construed, *Lowen v. Tower Asset Management,* 829 F.2d 1209, 1213 (2nd Cir. 1987); *Leigh,* 727 F.2d at 126, as is the term

"adverse interest." *See Sandoval v. Simmons,* 622 F.Supp. 1174, 1213–14 (C.D.Ill. 1985). To be adverse within the meaning of the ERISA, the interests need not directly conflict but must be sufficiently different. *See id.* at 1213.

■ Shearson's arguments in support of its motion for summary judgment on Count IV are not persuasive. First, Shearson contends that it did not violate Section 406(b), because it did not act on behalf of or represent anyone whose interests were adverse to those of the Plan. However, Shearson's construction of Section 406(b) would rob this section of most of its force. Section 406(b) prohibits a fiduciary from involving a party in a transaction with Plan assets, if the party has interests that are adverse to those of the Plan. In this case, the plaintiffs have presented sufficient evidence from which a reasonable factfinder could determine that Kitchel's interests were sufficiently different from (and therefore adverse to) those of the Plan to trigger application of Section 406(b).

Not all differences rise to the level of adversity within the meaning of Section 406(b), but the plaintiffs have offered sufficient evidence from which a reasonable factfinder could find the presence of adverse interests in this case. Early in its relationship with Shearson, the plaintiffs evidenced concern with Shearson's performance. *See* Plaintiff's Opposition, at Ex. 8, at 189 (deposition of David S. Barr) (as early as 1987, Fund Counsel Barr was concerned about inadequate performance). By June of 1989, Shearson personnel acknowledged Shearson's underperformance, *see id.* at Ex. 35, at 56 (deposition of Jeffrey Applegate), and later, the plaintiffs placed Shearson on probation. *See id.,* Ex. 8, at 190 (deposition of David S. Barr). While an investment management firm's employee, like Kitchel, always has an interest in his or her firm's retention of lucrative management contracts,

---

5. In relevant part, this subsection provides:

The term "party in interest" means, as to an employee benefit plan—

(A) any fiduciary (including, but not limited to, any administrator, officer, trustee, or custodian), counsel, or employee of such employee benefit plan;

(B) a person providing services to such plan;

\* \* \* \* \* \*

(H) an employee ... of a person described in subparagraph B ... or of the employee benefit plan;

\* \* \* \* \* \*

29 U.S.C. §§ 1002(14)(A) & (B).

such an interest may rise to the level of adversity where the employee and firm engage in deceptive conduct to the detriment of the Plan in order to establish and then maintain the firm's grip on the underlying contract. The evidence here allows for a reasonable inference that Kitchel's interest in Shearson's retention rose to the level of adversity.

A reasonable factfinder could also determine that Shearson exploited Kitchel's connection to cofiduciary Duval in order to retain the contract. Shearson paid Kitchel over $900,000—a fee which the evidence suggests may have stemmed from Plan assets and which may have been earned, at least in part, because of Kitchel's secret access to Duval and his ability to "put out fires" related to Shearson's management of the Plan. Kitchel's own words indicate that his interests, and Shearson's, diverged sufficiently from those of the Plan:

> There have been several times throughout the history of this account when events (results) have called for the client to question retaining you (us) as the manager. Each time, including now, you (and I) have been dispatched to put out the fires. You're aware of my rapport with Mr. Duval and we both know it is in *our* best interests to try and not rock the boat.

*Id.* at Ex. 39 (Letter of March 12, 1991, from Kent D. Kitchel to Robin Pinkham, Plan Account Manager) (emphasis in original).

While it may have been in Shearson's and Kitchel's interests to "not rock the boat," a reasonable factfinder could determine that the continued concealment of the connection between Kitchel and Duval was adverse to the Plan. Genuine issues of material fact exist as to whether Kitchel's interests were adverse and whether Shearson violated Section 406(b) by transferring over $900,000 in Plan assets through fees to Kitchel, presumably to exploit Kitchel's secret connection to, and influence with, Duval. Although both the plaintiffs and the defendants would profit from favorable investment returns, only the defendants stood to benefit by exploiting and then concealing the Kitchel connection, the existence of which the plaintiffs contend would have been material to their decision-

making calculus in deciding whether to retain Shearson initially and to continue Shearson's retention in the face of flagging performance. Because genuine issues of material fact exist as to whether Shearson's conduct violated Section 406(b), Shearson's motion will be denied.

■■■ Second, Shearson argues that its conduct did not violate Section 406(a), which broadly prohibits transactions with parties in interest subject to the narrow exceptions of Section 408(b). Shearson admits that as an employee and account executive, Kitchel was a party in interest. *See* Answer to Amended Complaint, at ¶ 21; Shearson's Rule 108 Statement, at ¶ 19. Nevertheless, Shearson contends that as an employee, Kitchel is a different type of party in interest. Moreover, according to Shearson, Kitchel was not paid out of Plan assets, but even if he had been, his compensation was reasonable under Section 408(b).

■■■ Shearson's arguments are again unpersuasive. By its own admission, Kitchel was a party in interest, and Shearson offers no authority for its argument that parties in interest under one subsection should be treated differently from those of other subsections. While entities not listed in the definition of parties in interest are not parties in interest even if closely related to a party in interest, *see Compton*, 57 F.3d at 278, Kitchel, as admitted by Shearson, falls within the list. Shearson's admission is consistent with the plain text of 29 U.S.C. §§ 1002(14)(B) & 1002(14)(H). Therefore, the prohibitions of Section 406(a) apply to transactions with Kitchel if Plan assets were transferred, directly or indirectly, to him.

The term "plan asset" would include fees or commissions paid to Kitchel to the extent such fees or commissions stemmed from fees paid to Shearson out of Plan assets, because the term is, as it should be, broadly construed to include those payments that "benefit (financial or otherwise) . . . the fiduciary at the expense of the plan participants." *Acosta*, 950 F.2d at 620; *e.g., Reich v. Lancaster*, 843 F.Supp. 194, 202–03 (N.D.Tex. 1993), *aff'd*, 55 F.3d 1034 (5th Cir.1995) (payment of commissions and fees paid to service

providers constitutes transfer of plan assets in violation of Section 406(a)(1)); *In re Consolidated Welfare Fund ERISA Litigation,* 839 F.Supp. 1068, 1073 (S.D.N.Y.1993) (commission earned for investment plan management constitutes "plan assets" under ERISA). The plaintiffs here have offered evidence allowing for a reasonable inference that Kitchel was paid over $900,000 for his services in relation to the Plan, which fee or commission was based upon a percentage of the fee Shearson received for managing the Plan.

Because the plaintiffs have offered sufficient evidence to establish that genuine issues of material fact exist as to whether Kitchel was paid out of Plan assets and, if so, whether his services were necessary and his compensation reasonable, *see Arakelian v. Nat'l Western Life Ins. Co.,* 680 F.Supp. 400, 406 (D.D.C.1987), Shearson's motion on Count IV will be denied.

### 3. Count VII.

In Count VII, the plaintiffs seek to hold Shearson liable for Duval's and Kitchel's breaches as cofiduciaries under Section 405. Shearson contends that it is exposed to no ERISA liability under Section 405, because neither Duval nor Kitchel has violated Sections 404 or 406, contrary to the plaintiffs' allegations. Shearson's motion for summary judgment will be denied as to cofiduciary Duval's alleged breach, but granted as to the alleged breach by Kitchel, a nonfiduciary.

The plaintiffs allege in Count I that Duval violated his statutory duty as a fiduciary by failing to disclose Kitchel's connection to him and to Shearson, by participating in deliberations concerning Shearson's selection, and by concealing "Kitchel's connection to and compensation received from the Plan's account with Shearson." Amended Complaint, at ¶ 41. In Count II, the plaintiffs allege that Duval violated Section 406 by participating in deliberations regarding Shearson's initial and continued retention, by urging the trustees to vote for Shearson, and by allowing the Plan to pay Kitchel compensation, directly or indirectly. *Id.* at ¶ 43.

In support of its motion for summary judgment, Shearson focuses on Duval's alleged violation of Section 406, contending that because Kitchel is only Duval's non-adopted stepson, Kitchel is not a party-in-interest within the meaning of ERISA and, therefore, there can be no violation of Section 406 by Duval (or, *a fortiori,* by Shearson). With respect to Section 404, Shearson invokes the same grounds on behalf of both Duval and Kitchel that the Court has rejected when raised by Shearson to protect itself. *See supra.* In opposition, the plaintiffs marshal the same arguments and much of the same evidence that was used to defeat Shearson's summary judgment motion on Counts III and IV.

As a cofiduciary, Shearson may be held liable for the alleged breach of Duval's fiduciary duty. 29 U.S.C. § 1105(a); *see Fink,* 772 F.2d at 958. The facts offered by the plaintiffs state claims against Duval and the plaintiffs have offered sufficient evidence to satisfy their burdens as nonmovants: genuine issues of material fact exist as to Duval's liability. Because of the existence of such issues, summary judgment is inappropriate in favor of Shearson on this Count. At trial, if the plaintiffs prove their case as to Duval's liability, Shearson could be held liable under Section 405 as Duval's cofiduciary. Shearson's motion will therefore be denied as to Duval. However, as explained below, Kitchel was not a fiduciary within the meaning of ERISA; therefore, Shearson is not subject to cofiduciary liability arising under Section 405 as to Kitchel. Shearson's motion will be granted as to Kitchel.

### 4. Count IX.

Finally, Shearson attacks the claim based on the Investment Advisors Act ("IAA"), 15 U.S.C. § 80b–15 (1994). In Count IX, the plaintiffs have alleged that Shearson engaged in fraudulent practices in violation of the IAA. Amended Complaint, at ¶¶ 58–59. Shearson contends that even if a violation could be proved, the plaintiffs are not entitled to any monetary recovery, because Shearson already conferred a benefit of $40,-000,000 upon the plaintiffs.

Neither party invested much effort in making or in responding to this argument and it requires little attention by the Court, at this stage of the case, to address and dispose of Shearson's claim. The record as a whole clearly indicates that whether Shearson violated the IAA is a genuine issue of material fact. Also disputed is the amount of damages, if any, and the benefit conferred upon the plaintiffs, if any. If the plaintiffs are able to prove an IAA violation at trial, the appropriate remedy, if any, would be determined based on the evidence introduced at trial.

**Kitchel's Motion for Summary Judgment**

Kitchel moves for summary judgment on Counts V, VI and VII, contending that no genuine issues of material fact exist and that he is entitled to judgment as a matter of law. *See* Kitchel's Motion for Summary Judgment, *supra*, at 1. These counts are based upon Kitchel's alleged breach of fiduciary duty (Count V), engaging in a prohibited transaction as a fiduciary (Count VI) and the alleged breaches of duty by Kitchel's cofiduciaries (Count VII). The plaintiffs appear to concede that Kitchel is not an ERISA fiduciary. *See* Plaintiffs' Response to Defendant Kitchel's Motion for Summary Judgment, at 1 ("it does not appear at this juncture that liability against Kitchel can be predicated upon his status as a fiduciary").

Simply stated, whether an individual is an ERISA fiduciary turns upon whether the individual has discretionary authority or responsibility in the administration of a plan or regarding the disposition of plan assets. 29 U.S.C. § 1002(21)(A)[6]; *Mertens v. Hewitt Associates*, 508 U.S. 248, 260, 113 S.Ct. 2063, 2071, 124 L.Ed.2d 161 (1993); *Schloegel v. Boswell*, 994 F.2d 266, 271 (5th Cir.), *cert. denied*, 510 U.S. 964, 114 S.Ct. 440, 126 L.Ed.2d 374 (1993). Mere influence over a fiduciary's decisions regarding a plan is not enough to constitute discretionary control, triggering ERISA liability. *Fink*, 772

F.2d at 958. Professional service providers become liable under ERISA when their participation is so substantial that they cross the line from advisor to fiduciary. *Mertens*, 508 U.S. at 260, 113 S.Ct. at 2071. Whether a person is a fiduciary is a fact-bound inquiry depending upon the degree of individual discretion or control that is vested in the person. *Id.*, 508 U.S. at 260, 113 S.Ct. at 2071; *Schloegel*, 994 F.2d at 271.

Kitchel was a financial consultant employed by Shearson. *See* Kitchel's Motion for Summary Judgment, *supra*, at Ex. A, p. 43. While a person's actions, not his official title determine his or her fiduciary status, *Acosta*, 950 F.2d at 618, there is no evidence that Kitchel exercised any individual discretionary authority or control over Plan assets. Kitchel's Motion for Summary Judgment, *supra*, at Ex. A, pp. 320–21. The account managers, not Kitchel, appear to have exercised the discretionary control in this case:

I wasn't the portfolio manager. I didn't have anything to do with the account, custody of the funds, the decision making regarding how the funds would be used.

Robin Pinkham, Peter Smith, et cetera, et cetera, they were the ones who were managers of the account.

*Id.* at Ex. A, p. 49.

That Kitchel was not the portfolio manager does not suggest that he was not actively involved in Shearson's activities. Kitchel "received and reviewed confirmations of purchases and sales made by the portfolio managers, on behalf of the Plan; received and reviewed monthly account statements of the Plan; received and reviewed quarterly monitoring reports prepared by Shearson for the Trustees of the Plan; had discussions with portfolio managers regarding the account and their meeting with Trustees of the Plan; communicated with the Plan Administrators regarding insurance for the Plan's account,"

---

6. Under ERISA, a person is a fiduciary to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.
29 U.S.C. § 1002(21)(A).

*id.* at Ex. C, p. 4, but he did not render investment advice or manage the Plan's assets. *Id.; see also id.* at Ex. D, p. 169 (Robin Pinkham: Kitchel "had no supervisory responsibility, no control over the account"); *id.* at Ex. E, p. 62 (Peter Frazier: Kitchel had no input on investment decisions); *id.* at Ex. G, p. 154 (Peter Hagerman: Kitchel never had any control or authority over the plan).

As a financial consultant, Kitchel was a Shearson employee involved in Shearson's services to and administration of the Plan. However, there is no evidence that Kitchel had the requisite discretionary authority or control of the Plan assets, and being a Shearson employee is not enough to trigger liability as an ERISA fiduciary, even accepting *arguendo* that Kitchel's conduct was improper. The trigger is simply whether he exercised discretionary authority or control. Because the plaintiffs have offered no evidence indicating that he did, Kitchel cannot be considered an ERISA fiduciary. The counts based upon such a premise must fall. Kitchel's motion for summary judgment will be granted.[7]

**Joint Consent Motion to Dismiss and For Stipulated Agreement.**

■ The plaintiffs and Defendant Duval have submitted their Consent Motion to Dismiss for the Court's approval. In consideration of Duval's payment of $500,000, the plaintiffs would agree to a global settlement, dismissing their claims against Duval in this matter and in Civ. A. No. 92–1248, which is presently stayed. The Consent Motion to Dismiss is conditioned, however, upon the entry of a Court Order barring Defendants Shearson and Kitchel from pursuing any contribution or indemnity claims against Duval that might arise based on Shearson or Kitchel's potential liability to the plaintiffs in this action and in No. 92–1248. Defendants

Shearson and Kitchel oppose, contending that they cannot be bound by a settlement agreement to which they are not party. The central legal issue underlying the dispute is whether contribution and indemnity from a breaching fiduciary is available to a breaching cofiduciary.

In the Memorandum Opinion and Order of April 14, 1994, 1994 WL 903314, this Court dismissed the defendants' counterclaims against the plaintiff trustee fiduciaries, holding that the defendants "are the alleged wrongdoers and seek to impose liability on the plaintiffs simply by virtue of the plaintiffs' status as fiduciaries, not because plaintiffs are equally culpable for any damages." Memorandum Opinion and Order, slip. op. at 7 n. 4 (JHG) (D.D.C., Apr. 14, 1994). However, there are no claims for contribution and indemnity currently pending against cofiduciary Defendant Duval. Nevertheless, apparently concerned that some may arise, Duval attempts to use the Consent Motion to Dismiss as a shield by stretching this Court's Memorandum Opinion of April 14, 1994. The basis for that opinion, issued as a result of claims asserted in the defendants' answers, squarely rested on the fact that the plaintiff trustee fiduciaries could not be held liable where the claims were based merely on their status as fiduciaries rather than on allegations of wrongdoing. *See* Memorandum Opinion and Order, *supra,* slip. op. at 7 n. 4.

As the plaintiffs and Defendant Duval note, Rule 41(a)(2) of the Federal Rules of Civil Procedure allows for the Court to order the dismissal of claims, without prejudice, upon such terms and conditions that the Court deems proper. Rule 41(c) authorizes the Court to extend application of such a dismissal to third-party claims. However, no third-party claims for contribution and indemnity are before the Court, and Defen-

---

7. Kitchel may still bear some liability under Count VIII as a nonfiduciary. *See Fink,* 772 F.2d at 958 (nonfiduciary who knowingly participates in a breach of trust is subject to liability under ERISA); *e.g., Pension Ben. Guar. Corp. v. Ross,* 781 F.Supp. 415, 418–20 (M.D.N.C.1991). *Cf. Mertens,* 508 U.S. at 253–54 & n. 4, 113 S.Ct. at 2067 & n. 4 ("While ERISA contains various provisions that can be read as imposing obligations upon nonfiduciaries, including actuaries,

no provision explicitly requires them to avoid participation (knowing or unknowing) in a fiduciary's breach of fiduciary duty.") (dictum). *See generally Mertens v. Hewitt Associates: the Supreme Court's Dismantling of Civil Enforcement Under ERISA,* 1994 Det.C.L.Rev. 1089, 1104–08; *Mertens v. Hewitt Associates and the ERISA Liability of the Professional Service Provider,* 15 Berkeley J.Emp. & Lab.Law 273 (1994).

**830**

dants Shearson and Kitchel cannot be bound by an agreement to which they are not party. The plaintiffs and Duval are free to enter into an agreement that settles their claims in this matter and in Civ. A. No. 92–1248, but they may not use such an agreement as vehicle to bind non-parties to such agreement. Nor may it be used to obtain advisory opinions regarding legal issues not presently before the Court. The Consent Motion to Dismiss will not be approved.

### Conclusion

For the reasons expressed above, it is hereby

ORDERED that Shearson's motion for summary judgment is denied in part and granted in part; it is

FURTHER ORDERED that Shearson's motion for summary judgment is denied as to Counts III, IV and IX; and it is denied as to Count VII based upon alleged fiduciary breaches by cofiduciary Defendant Duval; it is

FURTHER ORDERED that Shearson's motion for summary judgment is granted as to Count VII based upon alleged fiduciary breaches by nonfiduciary Defendant Kitchel; it is

FURTHER ORDERED that Kitchel's motion for summary judgment is granted as to Counts V, VI and VII; it is

FURTHER ORDERED that the plaintiffs' and Duval's Consent Motion to Dismiss is not approved; and it is

FURTHER ORDERED that a status conference is set for Wednesday, May 8, 1996, at 9:15 a.m., to discuss the future of this case. At the status conference, counsel should be prepared to advise the Court whether mediation or a settlement conference before a magistrate judge would be more productive. To assist the Court in setting pretrial and trial dates, the parties should also be prepared to estimate how long it would take to present their cases at trial.

IT IS SO ORDERED.