**PATIENT ADVOCATES, LLC, Plaintiff,**

v.

**Alan M. PRYSUNKA, in his Official Capacity as Executive Director of the Maine Health Data Organization, Defendant.**

**Civ. No. 03–118–P–H.**

United States District Court, D. Maine.

March 24, 2004.

Andrew L. Black, Maine Attorney General's Office, Augusta, ME, for Executive Director Maine Health Data Organization.

Daniel L. Cummings, Norman, Hanson & Detroy, Portland, ME, for Patient Advocates LLC.

Andrew S. Hagler, Fort Andross, Brunswick, ME, for Maine Health Data Organization.

Melissa Reynolds O'Dea, Assistant Attorney General, Augusta, ME, for Maine Health Data Organization, Executive Director Maine Health Data Organization.

## ORDER AFFIRMING RECOMMENDED DECISION OF THE MAGISTRATE JUDGE

HORNBY, District Judge.

The United States Magistrate Judge filed with the court on January 21, 2004, with copies to counsel, his Report and Recommended Decision on Defendant's Motion for Summary Judgment. The plaintiff filed an objection to the Recommended Decision on February 9, 2004. I have reviewed and considered the Recommended Decision, together with the entire record; I have made a *de novo* determination of all matters adjudicated by the Recommended Decision; and I concur with the recommendations of the United States Magistrate Judge for the reasons set forth in the Recommended Decision, except as follows, and determine that no further proceeding is necessary.

In Count III of the Amended Complaint, the plaintiff, Patient Advocates, alleges that the Employee Retirement Income Security Act ("ERISA") preempts 22 M.R.S.A. §§ 8701–8712. That state statute creates the Maine Health Data Organization ("MHDO") and charges it with creating and maintaining "a useful, objective and comprehensive health information database" to be used to "improve the health of Maine citizens." 22 M.R.S.A. § 8703(1). To fulfill its statutory obligation, MHDO requires certain entities, including third-party administrators and third-party payers, to provide it with health care claims data, such as provider information, payment information, diagnoses, and demographic information for plan members. Code Me. Rules § 90–590. Patient Advocates is a third-party administrator that provides various services to many ERISA welfare benefit plans, including processing and paying claims. In 2002, Patient Advocates reported that it processed 77,664 health care claims on behalf of its client plans. Def.'s Statement of Material Facts ("SMF") ¶ 13; Pl.'s Reply SMF ¶ 13. As a result, it obtains information from these plans that is subject to the MHDO reporting requirements. Patient Advocates argues that the information, however, amounts to "plan assets," and is therefore beyond the reach of the state law.

In his recommended decision, the Magistrate Judge correctly observed that the parties had not made clear which provision of ERISA was at issue. Because one of Patient Advocates' cited cases identified 29 U.S.C. § 1106(b)(1) as the provision at issue, the Magistrate Judge understandably limited his analysis of Count III to that provision. Section 1106(b)(1) prohibits a plan fiduciary from dealing with "the assets of the plan in his own interest or for his own account." But the parties agreed that Patient Advocates was not a plan fiduciary. The Magistrate Judge therefore concluded that "the statute does not apply to the plaintiff at all" and did not reach the question whether the data constitute "plan assets." Recommended Decision at 8.

In its objection to the recommended decision, Patient Advocates argues that 29 U.S.C. §§ 1104 and 1106 "in tandem essentially require a plan fiduciary to deal with plan assets in an ordinary and prudent manner and for the exclusive benefit of the beneficiaries of a plan." Pl.'s Objection at 14. Patient Advocates argues that, as an agent for various plan fiduciaries, it is bound by the same standards that ERISA imposes on fiduciaries. According to Patient Advocates, the data that MHDO seeks amount to "plan assets" that fiduciaries are bound to preserve for the benefit

of the plan beneficiaries. In response, MHDO does not argue that the Magistrate Judge's reasoning with regard to Count III was correct. Instead, it argues only that the requested information is not "plan assets" and that, if it is, the Maine law does not conflict with ERISA fiduciary obligations. Because the parties apparently agree that Count III is not foreclosed by the mere fact that Patient Advocates is not a fiduciary, I turn to whether the data at issue in this case should be treated as "plan assets" under ERISA.

ERISA does not define the term "plan assets."[1] Even the broadest definition of "plan assets," however, contemplates something of value. *See Health Cost Controls v. Bichanich,* 968 F.Supp. 396, 399 (N.D.Ill.1997). Patient Advocates argues that the information MHDO requests is valuable intellectual property for which "[c]orporations routinely pay thousands of dollars . . . ." Objection at 16. But Patient Advocates has not produced any evidence to sustain this factual assertion on this summary judgment motion. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (where non-moving party will bear the burden of proof on a dispositive issue at trial it must designate "specific facts showing that there is a genuine issue for trial"). Saying that the information has economic value does not make it so. The summary judgment record does not support Patient Advocates' assertion that the data at issue in this case have financial value.[2]

Moreover, Patient Advocates has produced no evidence to show that it or the plan sponsors treated this information as a plan asset (before the current controversy).[3] 29 U.S.C. § 1103 provides that, with some exceptions not relevant here, "all assets of an employee benefit plan shall be held in trust by one or more trustees." MHDO points out that none of the plan documents related to Patient Advocates' administration of health plans suggest that this information is held in trust. Def.'s SMF at ¶ 27.[4] And there is no evidence in

---

**1.** There are Department of Labor regulations discussing two types of "plan assets": plan investments in another entity, 29 CFR § 2510.3–101, and participant contributions, *id.* § 2510.3–102. But these regulations are clearly not exhaustive definitions of plan assets. Although the term "plan assets" is not defined in ERISA or the regulations, the term appears throughout the statute and carries a host of obligations. For example, "plan assets" are required to be held in trust, 29 U.S.C. § 1103(a), to be used for the exclusive benefit of participants and beneficiaries, *id.* § 1103(c)(1), and to be allocated among participants and beneficiaries upon termination of the plan. *Id.* § 1344.

**2.** Patient Advocates relies on *Acosta v. Pacific Enterprises,* 950 F.2d 611, 620 (9th Cir.1991), where the court said that "[i]n order to determine whether a particular item constitutes an 'asset of the plan,' it is necessary to determine whether the item in question may be used to the benefit (financial or otherwise) of the fiduciary at the expense of the plan participants or beneficiaries." *Acosta* involved

allegations of fiduciary self-dealing, allegations not present in this case. Because the summary judgment record does not support Patient Advocates' assertion that the information has value, I do not need to decide whether *Acosta's* definition of "plan assets" applies in this Circuit or outside the context of fiduciary self-dealing.

**3.** The Department of Labor has opined that "plan assets":

generally are to be identified on the basis of ordinary notions of property rights under non-ERISA law. This identification process includes consideration of any contract or other legal instrument involving the plan, including the plan documents. It also requires the consideration of the actions and representations of the parties involved. DOL Letter Opinion 92–02A (Jan. 17, 1992).

**4.** MHDO asserts that "[t]he plan documents related to plaintiff's administration of health plans for its clients do not designate claims data or other plan information as a plan asset,

the record that the data are, in fact, held in trust.

Data or information that a plan administrator accumulates in the course of administering a plan are certainly not conventional "plan assets." Normally, this claims data will be mere by-products of administering benefit plans. Unlike stocks, bonds, cash, investment contracts and other "hard" assets, claims information typically is not acquired for its value or held as an investment. Moreover, there is no evidence that the data in this case are valuable or that the plan sponsors viewed or treated the data as assets of the plans. Without deciding whether information or data could ever constitute "plan assets" under ERISA, I conclude that the data here are not plan assets.

Finally, if the claims data were to qualify as plan assets, the issue would remain whether a state law mandating their disclosure for inclusion in a health information database conflicts with the obligations that ERISA places on plan fiduciaries. ERISA requires plan fiduciaries to deal with plan assets prudently, 29 U.S.C. § 1104(a), and to hold them for the exclusive benefit of participants and beneficiaries. *Id.* § 1103(c). I am skeptical that a plan fiduciary would violate these provisions of ERISA by complying with a state law requiring the fiduciary to provide claims information for a database used to improve the health of Maine citizens. *See Egelhoff v. Egelhoff* 532 U.S. 141, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001).

It is therefore **ORDERED** that the Recommended Decision of the Magistrate Judge

is hereby **ADOPTED**. The defendant's motion for summary judgment is **GRANTED**.

**SO ORDERED.**

---

or indicate that the claims data is held in trust." Def.'s SMF ¶ 27. Patient Advocates' response is: "Qualify. The assertions contained in number 27 constitute legal arguments based on the language of the documents referred to." Pl.'s Reply SMF at ¶ 27.

MHDO's assertion is a statement about what the documents contain (or do not contain); it is not a legal argument. Because Patient Advocates did not deny or controvert MHDO's assertion, it is deemed admitted. Local Rule 56(e).